# MARCH, 1925.

### J. A. HERRING ET AL. v. HOUSTON NATIONAL EXCHANGE BANK.

#### No. 4121.   Decided March 4, 1925.

#### (269 S. W., 1031.)

1.—Suit Against State—Prison Commission.

An action against the Prison Commission to require them to pay, out of proceeds of the Penitentiary System, the amount of notes given by them for the purchase of a cotton-seed oil mill for use of such system, being in effect a suit against the State as seeking to fix a liability against it, could not be brought without consent of the Legislature. The Commission was not a corporation, but a mere governmental agency; and its creation with power to make contracts did not authorize such suit against it to fix liability on the State. (Pp. 398-400).

2.—Same—Legislative Resolution.

The passage of a resolution by the Legislature questioning the validity of a contract by the Prison Commission for the purchase of property, and recommending a suit by the State to test same, did not constitute a legislative consent to the bringing of a suit by holders of the notes given by the Commission on such purchase to compel their payment out of state funds of the Penitentiary System. (Pp. 400, 401).

3.—Prison Commission—Right to Purchase Land.

Article 6184, Vernon's Statutes, 1922 Supplement, (Act of March 24, 1919, Laws, 36th Leg., ch. 141, sec. 2, p. 260) forbidding purchase of land by the Prison Commission save with the approval of the Legislature, did not apply to and was not violated by their purchase of a cotton-seed oil mill and its machinery, the land on which it was situated being of small value compared with the mill and machinery and its purchase merely incidental to the main purpose of the Commission, the establishment of a mill or factory to be operated for the benefit of the Penitentiary System. (P. 401).

Questions certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

*W. A. Keeling*, Attorney-General, and *W. W. Caves*, Assistant for appellants.

Clearly this is a suit and judgment against the State, to all intents and purposes, no less so than if the State was the actual defendant in

name. To cite authorities sustaining this proposition would seem superfluous. We cite, however, Borden v. Houston, 2 Texas, 594; Bates v. Republic, 2 Texas, 616; Hosner v. DeYoung, 1 Texas, 764; Chevalier v. State, 10 Texas, 315; State v. Snyder, 66 Texas, 687 (18 S. W., 106); Treasurer v. Wygall, 46 Texas, 447; Auditorial Board v. Arles, 15 Texas, 72; Imperial Sugar Co. v. Cabel (Civ. App.), 179 S. W., 83; State v. Elliott (Civ. App.), 212 S. W., 695; Antoni v. Greenhow, 107 U. S., 769; Louisiana v. Jumel, 107 U. S., 711; Murray v. Wilson Distilling Co., 213 U. S., 151; Ballaine v. Alaska Northern Ry. Co., United States Intervener (U. S. C. C. of App.), 259 Fed. Rep., 183; Hagood v. Southern, 117 U. S., 52; In re Ayers, 123 U. S., 443; 36 Cyc., pp. 915-919; 25 R. C. L., p. 412, Sec. 49, p. 413, Sec. 50; and Herring v. Houston National Exchange Bank, 113 Texas, 264.

It is clearly evident that this property consists of and was and is land. A list of the authorities so holding would be but a catalog of all books and court decisions upon the subject. Being land, the Board of Prison Commissioners was not authorized to purchase same and to execute the notes here sued upon in part payment for same, unless and until said land and the maximum price to be paid therefor had been submitted to and approved by the Legislature. This is evident from the provisions of Chapter 63, page 162, General Laws, First and Second Called Session, Thirty-sixth Legislature, effective July 28, 1919, which now appears as Article 6184 of Vernon's Texas Civil and Criminal Statutes, 1922 Supplement.

*W. L. Hill*, for appellee.

It is the duty of the Prison Commission to pay the notes in evidence in this case and a judgment requiring it to do so may be enforced even though the state may not have expressly consented thereto. Art. 5, Sec. 8, Texas Constitution; Art. 5, Sec. 3, Texas Constitution; Art. 1526, Revised Statutes of Texas; Art. 1592, Revised Statutes of Texas; Art. 1713, Revised Statutes of Texas; Patton v. State, 117 Ind. 585, 19 N. E., 303; Jernigan v. Finley, 90 Texas, 211.

Where the state creates an agency with the power to incur obligations and to get possession of the property of the citizen on the faith of such obligations, and the agency does create an obligation and gets possession of the property of the citizen under a promise to pay. it is the imperative duty of the agency to pay for the property purchased and such agency is not immune from an action by the citizen to compel the performance of such obligation. Fristo v. Blum, 92 Texas, 8 and authorities there cited; Commonwealth Finance Corporation v. Landis, 260 Fed. Rep., 444; Heil v. United States,

273 Fed. Rep., 729; Sloan Shipyards Corporation v. United States Shipping Board, 258 U. S., 566.

The passage by the Legislature of the resolution declaring that the question of the validity of the notes sued on should be judicially determined and recommending that the Attorney General's Department bring suit to set aside said notes is a consent for this suit to be brought and a judgment rendered and enforced.

The purchase by the Prison Commission of the mill property, including the land upon which the mill was situated, was not in violation of the provisions of Article 6184 of the Statutes, but was authorized by Article 6183 of the Statute.

To the extent that a reversal of the executive construction would deprive persons of vested rights in property or contract, the executive construction will be regarded as conclusive. 37 Cyc., 1141, 1142; State v. Gunter, 81 S. W., 1029; Edwards v. Jones, 7 Texas, 372; Ray v. Schneider, 221 S. W., 881; Tolleson v. Rogan, 73 S. W., 520; Cooley on Constitutional Limitations, 5th Ed., p. 69; State v. H. & T. C. R. Co., 68 S. W., 777; Yoakum County v. Slaughter, 195 S. W., 1135; Moore v. Terrell, 202 S. W., 729; Harris County v. Hammond, 203 S. W., 445; Fielder v. Oil Co., 208 S. W., 158; State v. H. & T. C. R. Co., 209 S. W., 820.

MR. JUSTICE PIERSON delivered the opinion of the court.

The following from the certificate of the Honorable Court of Civil Appeals for the First Supreme Judicial District is used as a statement of the case:

"On the 11th day of December, 1920, the prison commissioners of Texas purchased from the Ft. Bend Cotton Oil Company, for the use of the prison system, about three acres of land situated in Richmond, Ft. Bend County, Texas, on which were located the machinery, buildings, and other things, constituting the Ft. Bend Cotton Oil Company's cotton seed oil mill. In part consideration for said property said prison commissioners in their official capacity executed and delivered to said Oil Mill Company the three notes sued upon in this suit, each dated December 20, 1920, each for the sum of $31,250.00, payable to the Cotton Oil Company on or before one, two, and three years, respectively, from date, at the office of the Houston National Exchange Bank at Houston, Texas. To secure the payment of said notes said commissioners executed and delivered a deed of trust to one W. P. Winner by which they conveyed the property so purchased to Winner as trustee for the benefit of said Oil Mill Company. The notes mentioned were transferred to and became the property of the plaintiff, the Houston National Exchange Bank, before maturity, and at the time of the filing of this suit one of said notes was long past due, and none of them had been paid.

\*      \*      \*      \*      \*      \*      \*      \*

"The value of the land purchased with the mill plant was but a small part of the consideration agreed to be paid for the entire property, and its purchase was incidental to the main purpose of the commission, which was the establishment of a mill or factory to be operated for the benefit of the penitentiary system.

"The Thirty-seventh Legislature of Texas, at its First Called Session, appointed a joint committee, consisting of four senators and five members of the house, to investigate the affairs of the prison system of this state, of which committee of the senate Senator Williams was chairman.

"On the 30th day of July, 1921, this joint committee made its report to both branches of the Legislature, and in said report, among other things, they said:

" 'We believe that the Commission was without authority to make this purchase in the manner in which they made it, and were acting in violation of the above mentioned Act of the Thirty-sixth Legislature (Section 2 (13) of Chapter 63, page 161, General Laws, First and Second Called Sessions, Thirty-sixth Legislature, now Article 6184, of Vernon's Texas Civil and Criminal Statutes, 1922 Supplement.) We find that the Attorney General's Department advised the Prison Commission that they could legally purchase the mill. However, we think this question is of such importance to the State as to require judicial determination. \*  \*  \*

" 'We recommend that none of the deferred payments evidenced by the lien notes executed by the Prison Commission for the Richmond Oil Mill be paid by the Prison Commission, and that the Attorney General's Department bring suit to set aside this purchase.'

"The report of the committee with the recommendation mentioned was adopted.

"On the 4th day of August, 1921, Senate Bill No. 61, known as the General Appropriation Bill, was introduced in the senate, which contained, among other things, substantially the following:

" 'State Penitentiaries.

" 'The proceeds of all convict labor on farms and elsewhere, the proceeds of all manufactured products, all farm products, and all other proceeds of the penitentiary system and of all other sources connected therewith, or so much thereof as may be necessary, are hereby appropriated for the maintenance and support of the penitentiary system, including buildings, farms, and improvements, and repairs on same, for the years ending August 31, 1922, and August 31, 1923, out of which fund shall also be paid any indebtedness of said system not otherwise provided for by specific appropriation, as well as the expenses attached to conveying convicts to the penitentiaries

and farms. Said funds shall be deposited with the State Treasurer and paid out as provided in Articles 6188 and 6192 of the Revised Civil Statutes of 1911.'

"On the 8th day of August, 1921, Senate Bill No. 61 being under consideration, Senator Williams, chairman of the Senate Committee to investigate penitentiary affairs, offered an amendment thereto as follows:

" 'But no money shall be paid by penitentiary commissioners to apply on mule note for $39,000 and interest made to Bassett Blakely, January 19, 1921, nor any amount of the amount due on Richmond Oil Mill purchase notes.'

"This amendment was adopted. This bill as amended was passed by the Senate and sent to the House for consideration. The House amended the bill by striking out the Williams amendment, and as amended passed the same. The Senate refused to pass the bill as amended by the House, and asked for a conference committee, which request was granted, and upon the report of such committee the bill was finally passed eliminating the Williams amendment, and is as hereinbefore set out.

"This suit was brought by the appellee against appellants, J. A. Herring, Sanford Dean, and Walker Sayles, who constitute the Prison Commission of the State of Texas, to recover the amount due upon the three promissory notes given by the Prison Commission to the Fort Bend Cotton Oil Company in part payment of the purchase price of the three acres of land in Fort Bend County with the cotton oil mill and machinery situated thereon, and to foreclose a lien on the property, which is fully described in the petition, given to secure the payment of the notes.

*    *    *    *    *    *    *    *

"Upon final trial in the court below judgment was rendered in favor of the appellee against the Prison Commission for the amount due upon the notes, and granting appellee's prayer for a writ of mandamus to compel the Prison Commissioners to pay the amount of said judgment out of any funds in their hands arising from the operation of the penitentiary system during the years ending August 31, 1922, and August 31, 1923, after paying the expenses of the maintenance and support of the system, including buildings, farms, and improvements and repairs thereon, and the expenses attached to conveying convicts to the penitentiary and farms. Appellee was denied foreclosure of its lien and no execution was awarded it to enforce the judgment.

"Appellants appealed from this judgment without filing an appeal bond and on motion of appellee this court dismissed the appeal, on the ground that the statute did not exempt the Prison Commission

from giving bond on appeal. From this judgment of dismissal your honorable court granted a writ of error and upon a hearing on said writ reversed our judgment and remanded the cause for determination by this court.

"We are unable to reach a satisfactory conclusion upon some of the questions presented by the appeal and deem it advisable to certify these questions for your decision. We respectfully ask:

"First: Conceding that the suit is a suit against the State, in that the judgment herein in favor of appellee will operate to fix a liability upon the State, does it necessarily follow from this fact that the suit cannot be maintained without the consent of the State? When the State creates an agency with the broad powers conferred upon the Prison Commission and authorizes it to go out and engage in various business undertakings and make all kinds of business contracts with the citizens, should such agency be held immune from suits by citizens with whom it has contracted merely because a judgment in favor of the citizens will subject the State to liability?

"Second: If it be held that the suit cannot be maintained without the consent of the Legislature, should the passage by the Legislature of the resolution before set out, which declares that the question of the validity of the contract upon which this suit is brought is of such importance to the State as to require judicial determination, and recommends that the Attorney General's Department bring suit to set aside the purchase of the property, be construed as a legislative expression of consent for this suit to be brought?

"Third: Was the purchase by the Prison Commission of the mill property, which included the land upon which the mill was situated, without the approval of the legislature, in violation of the provisions of Article 6184 of the statutes before mentioned?

We answer Question No. 1 in the affirmative.

In our former opinion in this case we held that this is a suit against the State, and the Board of Prison Commissioners as a department of the State could prosecute an appeal from the judgment against it without giving an appeal bond, as the judgment on the notes sued on was a judgment against the State. See 113 Texas, 264, 255 S. W., 1097.

It is an attribute of sovereignty, and it is well established and generally conceded, that the sovereignty cannot be sued in its courts without its consent. Whether or not the contract for the purchase of the oil mill property is valid, and whether or not the obligations of the notes are voidable for any reason, are judicial questions, upon which appellee, it appears, should be accorded a hearing before a tribunal capable of passing upon the legal issues involved, to-wit: a court of competent jurisdiction; but the fixing of the governmental

policy in this regard rests with the Legislature.

In the cases cited by appellee it is freely admitted that the sovereignty cannot be sued without its consent. Heil v. United States, 273 Fed. Rep., 729; Commonwealth Finance Corporation v. Landis, 261 Fed. Rep., 440; Sloan Shipyards Corporation v. United States Fleet Corporation, 258 U. S., 549, 66 L. Ed., 762. In the first of these cases the court held that permission to sue the United States was expressly given by statute. The other two cases are easily distinguishable from the case before us. A reading of the majority opinion of the Supreme Court of the United States and of the dissenting opinion of Chief Justice Taft in the case of Sloan Shipyards Corporation v. United States Fleet Corporation makes it at once apparent that that case is no authority for holding that the State of Texas can be sued in the instant case without its consent. Under the Acts of Congress the *corporation* (Emergency Fleet Corporation) sued in both of the cases last mentioned was organized for the purpose of carrying on certain businesses in which the government was interested. It was created a legal entity, had corporate existence, with corporate property, and was subject to the control of its board of directors elected by stockholders as in other corporations. It was held that its nature and organization, and the enactment creating it, were such that consent to be sued was fairly implied in its creation.

The Board of Prison Commissioners is in no sense a corporation. It is purely an agency of government, a part of the government, performing no functions extra-governmental. It exists for the purposes of government only, and exercises none but governmental functions. Nothing differentiates it from any other purely governmental agency. If it can be sued without legislative consent, it being purely a governmental agency or department, then the government, the sovereignty, can be so sued. There is no difference. To hold differently in this case would be to abrogate the principle.

We answer Question No. 2 in the negative.

We are unable to hold that the expressions used in the report of the Penitentiary Investigation Committee and the adoption of that report by the Senate and House of Representatives conveys, even by implication, permission to be sued by appellee. We think in the language used and in the connection in which it was presented to the Legislature there is nothing whatever to suggest such a purpose on the part of the Legislature. It is evident from a study of the entire report of the Investigation Committee that the main purpose of that committee was to forestall the payment of these notes based upon the purchase of the oil mill property, because of certain alleged fraudulent acts and irregularities in the purchase of same, and to prevent, as

:far as lay within its power, the Prison Commission from paying for said property out of the revenues of the prison system. In any event, we think it would be presuming upon the intention of the Legislature to imply its consent for appellee to file suit against the State.

We answer Question No. 3 in the negative.

Article 6184, Vernon's Texas Civil and Criminal Statutes, 1922 Supplement, contains the following provision:

"The Prison Commission shall not purchase any land for the prison system of the State of Texas unless and until the land to be so purchased and the maximum price to be paid therefor shall have been submitted to and receive the approval of the Legislature of this State."

As stated in the certificate of the Honorable Court of Civil Appeals: "The value of the land purchased with the mill plant was but a small part of the consideration agreed to be paid for the entire property, and its purchase was incidental to the main purpose of the Commission, which was the establishment of a mill or factory to be operated for the benefit of the penitentiary system."

· It is clear that the land, the two or three acres included with the purchase of this oil mill and factory, was only incidental to the purchase and establishment of an oil mill and factory, and that the restrictions relating to the purchase of and paying for land for the prison system, as contained in Article 6184, have no application to the purchase of this property.

Judge Cureton did not sit in this case.