### BOARD OF WATER ENGINEERS et al. v. BRISCOE et al.

No. 9539.

Court of Civil Appeals of Texas. Galveston.

Nov. 12, 1930.

Appellees' Motion for Rehearing Denied and Board's Motion Granted in Part

Feb. 5, 1931.

Appellees' Second Motion Refused Feb. 19, 1931.

the prior action of the board granting the two persons named a permit to take and appropriate water from the Brazos river, and to have such a permit granted to, or right thereto vested in, themselves instead—calls for an interpretation of the policy of the state with reference to the use of its public waters, as is reflected in title 128 of our Revised Civil Statutes (article 7466 et seq.), and especially in articles 7492, 7496a, and 7590 thereof, having reference to what are therein termed "presentations" and "applications" for permits looking to such use.

The trial court, sitting without a jury, over pleas to the jurisdiction by the two personally sued defendants and of privilege by the members of the state board asserting, respectively, that the action—essentially one for mandamus against officers of an executive department of the government of the state—was exclusively cognizable by the Supreme Court of Texas under Rev. St. article 1735, and that such board members, pursuant to Rev. St. article 7567 and article 1995, subd. 20, were entitled to be sued only in Travis county where they officially resided, entertained and tried as one both declared upon causes of action against all defendants, and adjudged that the appellees Briscoe and Turner had a prior right as against appellants Jackson and Lehrer to a permit from the board to divert and appropriate water from the Brazos river at the location in Fort Bend county covered by the antecedent permit that body had granted for the same purpose to such two appellants, and, through the writ of mandamus against the board, directed that it accordingly cancel its former orders to the contrary, and in lieu thereof issue its permit to Briscoe and Turner.

On the appeal, in which the board of water engineers and the two individuals so cast below make common cause as appellants, this court reverses such action of the trial court, and directs the reinstatement of the permit in all respects as first granted to Jackson and Lehrer, holding in material substance in so doing upon the controlling questions raised:

(1) The district court of Fort Bend county had jurisdiction and venue of the suit as an action between the two sets of individuals, Jackson and Lehrer on the one side and Briscoe and Turner on the other, to determine which of them had been entitled to the permit both sought from the state board to take the water out of the river at the same place for irrigation purposes, pursuant to the respective "presentations" and "applications" they severally filed with the board;

(2) That court erred in undertaking to nullify the permit first granted by the board to Jackson and Lehrer, and to compel that body by the writ of mandamus to issue its later permit instead to Briscoe and Turner, because the original and prior "presentation" looking

Wirtz & Weinert, of Seguin, for appellants Jackson and Lehrer.

Robert Lee Bobbitt, Atty. Gen., and W. W. Caves, Asst. Atty. Gen., for appellant Board of Water Engineers.

Wolters, Blanchard & Woodul, and A. M. John, all of Houston, for appellees.

GRAVES, J.

This litigation—coming here as the residuum of two consolidated suits the appellees filed below against the state board of water engineers and the individuals Jackson and Lehrer, whereby they sought to have undone

to the permit as filed by Jackson and Lehrer was substantially sufficient for the purpose, and, along with their subsequent action under it, entitled them to its issuance as a matter of law, leaving only a ministerial duty to be performed by the board of water engineers in accordingly granting it.

(3) The board of water engineers is neither the head of an executive department of the state government that can only be sued in Travis county under subdivision 20 of Rev. St., article 1995, nor did this suit necessarily involve such act or duty on its part as was exclusively cognizable by the Supreme Court of Texas in accordance with R. S. article 1735.

(4) This action could not properly be treated as an appeal from the board's decision under article 7590 of our Revised Statutes, but, if it could be, the venue would still be in Fort Bend county under the express terms of that statute, in that the diversion was proposed to be made there.

(5) As concerns the matter of fees for the permit, the record shows, not only that the board so treated it, but also that each set of applicants substantially complied with the statutory requirements.

■ Briefly elaborating these holdings, more directly concerning the dilatory pleas first, it seems clear that the district court sitting in Fort Bend county not only had the jurisdictional power to hear this cause, but also that the venue of it was properly laid there; true, the state board of water engineers was a party, and the writ of mandamus to control its action was both applied for and issued, but such direct control of that body's official functions was not the sine qua non to the appellees' obtaining what they resorted to the court for—that is, a judicial determination that, at the time the board had acted upon the contest between them, they and not their rival applicants, the appellants, had been entitled to take and appropriate the water, and were then still so entitled; in other words, the two opposing sets of individuals were the real parties at interest, and the substantive bone of contention or issue over which they were at loggerheads was which of them was entitled to the preferential right to such use of the water; thus there was tendered a question, justiciable in equity, that lay back of the mere granting of the permit by the board, which did not constitute this pre-existing right itself, but was only evidentiary of it. Yuba River Power Co. v. Nevada Irrigation District, 207 Cal. 521, 279 P. 128; Fairbanks v. Hidalgo County Water Imp. Dist. No. 2 (Tex. Civ. App.) 261 S. W. 542, 548.

■ Wherefore the action, as we see it, was not in essential nature nothing but a mandamus suit against the state board of water engineers, but an appeal to the equity powers of the court to determine a controversy between individual interests, to which the board was not even a necessary party; there is no doubt, we think, that the court's authority to determine such a question was paramount to any vested in that agency of strictly circumscribed powers by the statutes creating it—indeed, one of them, R. S. article 7513, expressly so recognizes. Fairbanks v. Hidalgo County Water Imp. Dist. No. 2, supra. That statute requires the immediate certification of any court judgment affecting the title to any water right or other matter over which the Board is given supervision, to the latter's office, the effect of which filing there is to cancel "any record theretofore existing contrary to it," Fairbanks v. Hidalgo County Water Imp. Dist. No. 2, supra.

So that the court in this instance, by its superior power over the subject-matter of the controversy between the real parties at interest, the two sets of individuals, who were themselves personally before it, could have determined the essentials of the whole matter without the board's presence, irrespective of the then outstanding permit primarily issued, and such judicial determination would have been none the less effective in settling the title to the water right both sought.

■ Obviously, also, such power of the court was not improperly invoked in Fort Bend county, because neither individual defendant challenged the laying of the venue there by filing a plea of privilege, or otherwise, and one of them, Mr. Lehrer, admittedly both had his domicile and resided in that county. Subdivision 4 of R. S. article 1995.

The holding that the suit was not merely one for mandamus, and that the board of water engineers was not a necessary party, really obviates any necessity for determining whether it and its members constitute such a head or officers of a department of the state government as come within the purview of R S. articles 1735 and 1995, subd. 20; our view, however, as indicated supra, is that they do not, under such authorities as Sterrett v. Gibson (Tex. Civ. App.) 168 S. W. 16; Herring v. Bank (Tex. Civ. App.) 241 S. W. 540; Betts v. Johnson, 96 Tex. 360, 73 S. W. 4.

If, however, we are in error in the contrary view, and it should be held that the board was a necessary party, then, under the express provisions of R. S. article 1995, subdivisions 4 and 29a, it was suable in the county of the suit along with its individual codefendants, one of whom resided there; in no event, therefore, did the overruling below of the pleas of privilege by its members constitute any prejudicial error.

■■ It further follows from these views that this proceeding could neither be held to constitute an action coming within the provisions of R. S. article 7567, hence maintainable in Travis county alone, as is urged by appellants, nor yet an "appeal" from the de-

cision of the board within the meaning of R. S. article 7590, and on that account properly brought in Fort Bend county, as the appellees contend; the former statute plainly seems to relate only to complaints by going concerns already "engaged in furnishing water," presumably to consumers, over some rate, or other regulatory order, adopted by the board and governing that special service—not to applications to take and appropriate water in bulk from the river in the first instance, which are exclusively provided for in preceding articles 7492–7523.

While the latter (7590), we conclude, likewise has nothing to do with primary applications to merely take and appropriate water from the river, with which alone we think this litigation was concerned, but is only intended to apply after that process has first been gone through with pursuant to the foregoing articles 7492–7523, and when the applicant for such a privilege desires to go further and divert water from one natural water shed into another, no appeal from the action of the board in granting or refusing an application for a permit to take and appropriate only being provided for (Motl v. Boyd, 116 Tex. 82, 286 S. W. 458), and the gist of the applications on neither side in this instance being anything else, obviously no claim of an appeal from the board's refusal of their application for a permit is available to the appellees.

If we are mistaken in these holdings with reference to the effect and applicability of article 7590, and if this independent resort to the court on appellees' part should be regarded as in effect an appeal under its provisions, then that statute expressly prescribed the venue of it, since the evidence showed that the diversion, or taking of the water from the river, was to occur in that county.

On the merits, the controlling question as to which firm was entitled to the water right is, in our view reduced by the undisputed evidence to the single inquiry of whether or not the Jackson and Lehrer "presentation" was in sufficient compliance with R. S. article 7496a; we think it was, and that the water board was in consequence not privileged to take other action than it did upon it. Having been filed more than two years in advance of the appellees' "presentation," and, admittedly, being still in force with the right thereunder neither expired nor terminated when the application pursuant to it was thereafter in like manner duly filed on August 31, 1929, it imperatively carried the prior water or permit-right with it, notwithstanding the appellees had quickly followed their belated presentation with the filing under it of an earlier application than appellants' on August 21, 1929.

The Jackson and Lehrer presentation was as follows:

"The State of Texas, County of Colorado.

"Know all Men by These Presents: That we, G. M. Jackson and W. S. Lehrer, represent to the Board of Water Engineers for the State of Texas, that we desire to investigate the feasibility of a project hereinafter more definitely defined, having for its object the appropriation and beneficial use of water in quantities greater than twenty thousand acre-feet storage, or fifty second-feet diversion, or for generation of two thousand hydro-electric horsepower, and represents and shows that we have an organized engineering force adequate to proceed in an expeditious manner with such investigation.

"The said Jackson and Lehrer further represents and shows to said Board that the proposed location of said proposed project is as follows: On the Brazos River in Fort Bend County. Beginning at the intersection of the north line of the Wm. Little survey with the Brazos River, thence downstream to the intersection of said river with the Brazoria County line in Cow Creek. The purpose being to locate a diversion point for the irrigation of about one hundred thousand acres and the use of one hundred thousand acre-feet annually.

"We hereby make this presentation, and accompany same with a deposit of Two Hundred and Fifty Dollars ($250.00) in conformity with the requirements of section 16 et seq., Chapter 88, General Laws, Regular Session of the 35th Legislature of the State of Texas, 1917, as amended by Senate Bill No. 349 passed by the 39th Legislature, State of Texas, at its regular session, 1925, for the purpose of protecting our priority of rights.

"[Seal]   G. M. Jackson.
"W. S. Lehrer.

"Subscribed and sworn to before me this the 23rd day of October, A. D. 1926.

"Paul Juergens, Notary Public,
"Travis County, Texas."

In all material respects both these applications the parties thus respectively followed their "presentations" with, which were substantially of the same purport, conformed to the requirements of R. S. articles 7492–7494, inclusive, and each was filed under and in connection with its foregoing presentation.

At the request of the board, the Attorney General of the state rendered an opinion holding, in substance, that the Jackson and Lehrer presentation was sufficient under the statutes to support their application for a permit to appropriate the quantity of water at the diversion point set out therein, whereupon the permit was regularly issued to them, the board having on previous hearing considered the two opposing claims to it together.

In that opinion we concur; the quoted presentation, being duly sworn to, not only almost literally followed the first requirement of article 7496a by reciting that Jack-

son and Lehrer desired to investigate the feasibility of such a project, and had an organized engineering force adequate to proceed expeditiously with the investigation thereof, but also met in reasonable substance its further provisions as to description of the contemplated project, its location, purpose, and the quantity of water to be applied by measure, if known, and, if not, "by statement as near as possible of the quantity of water necessary to the contemplated use," by setting forth: (1) The proposed location is on the Brazos river in Fort Bend county, beginning at the intersection of the north line of the Wm. Little survey with the Brazos river, thence down stream to the intersection of the river with the Brazoria county line in Cow creek; (2) the purpose being to locate a diversion point for the irrigation of about 100,000 acres; (3) the quantity of water is set out as 100,000 acre feet annually.

No greater particularity nor exactness, even concerning the description of its location, it seems to us, was reasonably in contemplation in the enactment of article 7496a, which, in its form as amended by the Thirty-Ninth Legislature in 1925, as contradistinguished from articles 7492–7494 relating to subsequent "applications" for a permit, only has to do with antecedent "presentations" for or temporary options on designated areal confines from within which it is expected the public waters will be appropriated and applied to a beneficial use; palpably these were merely intended to cover preliminary and exploratory operations, or, more nearly in the language of the statute itself, "investigations as to the feasibility" of the undertaking, the exact engineering details required by the "application" articles (7492–7494) not having yet been obtained, wherefore a less detailed and more general statement was called for; two separate and distinct procedures are thus prescribed, and there must have been some legislative purpose in doing it that way; we can think of no other than that the "presentation" was to be a somewhat general forerunner of the more exacting "application," which was to protect a contemplated project to the proponent thereof until his investigation with an adequate engineering force should so determine its feasibility as to enable him then to furnish the additional facts requisite to the issuance of the final permit.

The description merely of an area along a river's course within which a diversion site for the extraction of a specific quantity (in acre-feet in this instance) of water is sought, in the nature of things, requires no such mathematical descent into exact details as does that of a "metes and bounds" designation of particular tracts of land that are proposed to be irrigated, and that—a diversion site or point for the extraction of so much water by volume—was all Jackson and Lehrer

either sought or obtained under the presentation they filed with the board in this instance.

As further expressive of our own view as to the sufficiency of their presentation, as well as the extent of the right they thereby acquired, we quote with approval from the opinion of the Attorney General to the board, as follows:

"It is our view that the Jackson and Lehrer presentation embraces the left or east bank of the river from its intersection with the north line of this William Little survey to the point of the nearest approach of said bank to the point where the Brazoria County line in Cow Creek intersects with the right or west bank of the river; that is, that the river area in reference to which the investigation for a point of diversion was to be made was that part of such area lying between a line across the river at right angles with its course at the intersection of the river with the north line of this William Little survey, and a line across the river at right angles with its course at the intersection of the river with the Brazoria County line in Cow Creek.

"This being true, it is our view that by reason of the filing of the Jackson and Lehrer presentation they thereby became vested, as a matter of law, with a right to select, and to designate in their application for a permit, such a diversion point as they might choose within this designated river area, and, having so selected and designated this point, that their right of diversion at such point is continued and preserved through their application for a permit, and that upon the granting to them of a permit under and in pursuance of their presentation this right will have "priority date" and will be effective from the date of the filing of their presentation. We think this is also true as to their right to appropriate for irrigation purposes, by diversion at this point, so much of the unappropriated water of this stream as may be designated in their permit. This does not mean, of course, that by reason of the filing of their presentation Jackson and Lehrer acquired, nor that under such permit as might be issued to them thereon they would or could be vested with, any right to the occupancy or use of any privately owned lands at this point of diversion. Such right can not be so acquired. Our reference is only to their right of diversion as relating to the waters involved.

"No lands are designated or described in the Jackson and Lehrer presentation to be irrigated, or as constituting any part of their contemplated project."

The water board, acting within what appears to have been its prerogative with reference to the statutory requirements concerning the permit fees, treated the engagements of both sets of applicants in that regard as sufficient, and no good reason for interfering with that action has been presented here.

Further discussion is deemed unnecessary, as these conclusions determine the merits of the appeal; they require the reversal of the trial court's judgment, and that this court's judgment enter decreeing that the appellees take nothing by their suits; it has been so ordered, with direction to the clerk of this court to forthwith transmit to the office of the board of water engineers a certified copy of this decree.

Reversed and rendered.

### On Motion for Rehearing.

After being favored with oral as well as written arguments on rehearing from counsel for all parties, we have been constrained to adhere to all our former conclusions in this cause, save the holding that the board of water engineers does not constitute the head of a department of the state government within the meaning of R. S. article 1995, subd. 20; pursuant to a reconsideration of the authorities cited by the Attorney General, we now think it should be held to be such. Revised Civil Statutes of Texas of 1925, subdivision 20 of article 1995; Herring v. Houston National Exchange Bank, 113 Tex. 264, 253 S. W. 813; Herring v. Houston National Exchange Bank, 114 Tex. 394, 269 S. W. 1031.

However, since it was originally further determined that the board and its members were not necessary parties to the suit, as to which no error has been perceived, no other change in that judgment is entailed than their dismissal from the cause. It has accordingly been ordered that the board of water engineers of the state and its members be dismissed from this suit, and that in all other respects the several motions for rehearing be overruled.

Overruled.