**NATIONAL BISCUIT CO. v. STATE.**

No. 8779.

Court of Civil Appeals of Texas.    Austin.
Jan. 18, 1939.

Rehearing Denied May 31, 1939.

Baker, Botts, Andrews & Wharton and Sidney Benbow, all of Houston, for appellant.

Wm. McCraw, Atty. Gen., and John J. McKay and Charles N. Avery, Jr., Asst. Attys. Gen., for the State.

BAUGH, Justice.

The National Biscuit Company, a foreign corporation with a permit to do business in Texas, brought this suit against the State under authority of a concurrent resolution passed by the Legislature in May, 1937, granting it permission to do so. Suit is to recover filing fees paid by appellant to the Secretary of State in 1909, and franchise taxes paid by it annually from 1907 to 1917, on the ground that the law under which these exactions were made was unconstitutional and was so adjudged by the Supreme Court in Looney v. Crane Co., 245 U.S. 178, 38 S.Ct. 85, 62 L.Ed. 230. Trial was to the court and judgment rendered in favor of the State, hence this appeal. The special exceptions of the State to the plaintiff's petition setting up the invalidity of the concurrent resolution under which the suit was brought, and pleas of laches and limitation, were overruled by the court, and the State cross assigns error as to these.

The appellant's contentions may be briefly summarized as follows:

1. That because of the heavy self-executing penalties provided in the statutes involved for failure to pay such fees and taxes, the moneys sought to be recovered, were paid involuntarily and under duress, and the tax payer therefore entitled to recover them.

2. That the only method of relief the appellant had was and is a suit against the State to recover such funds, which could not be brought until the State gave its consent to be sued.

3. That limitation should not begin to run against appellant until such consent was given.

4. That the resolution, granting that permission to appellant herein was valid.

The suit authorized by Senate Concurrent Resolution No. 63, (Gen. and Special Laws, 45th Leg., Reg.Sess., p. 1549) is a suit against the State. It was brought with the consent of the State duly granted. The first question presented, therefore, is whether such consent of the Legislature was so obtained by a valid resolution. The State here contends, as in the trial court, that the resolution in question was invalid because 1. It contained no title and was therefore in violation of Art. 3, Sec. 38 of the Constitution of Texas, Vernon's Ann.St.; 2. That it violated Art. 3, Sec. 35, of the State Constitution, because it contained more than one subject; and 3. That it was invalid because it undertook to appropriate money out of the Treasury by resolution and not by law.

496

The only caption on the face of the resolution was, "Senate Concurrent Resolution No. 63. By Stone." Following this it was recited under several paragraphs, that appellant had paid fees and taxes from 1907 to 1917, under laws declared unconstitutional; that no law authorized return of such moneys to appellant; that no machinery existed to determine what amount should be returned; that the Legislature had from time to time permitted such foreign corporations which had ·paid such taxes to recover same. Then followed the usual resolving clause granting appellant permission to sue the State in Travis County to determine the amount of the taxes illegally paid and further providing, "and there is hereby appropriated out of the Treasury such funds as may be necessary not heretofore appropriated to pay any final judgment which may be obtained by reason of the permission to sue the State of Texas herein granted," etc.

On the back of this resolution was endorsed: "S. C. R. No. 63 By: Stone Granting National Biscuit Company permission to bring suit against the State of Texas." Underneath this endorsement were further endorsements duly authenticated showing the courses of action taken by the Senate and the House on the resolution, and showing that it took the same course in the Legislature as a bill. It is the contention of the Attorney General that in view of the provisions of Art. 3, Sec. 38, that the presiding officer of the House and Senate shall "sign all bills and joint resolutions passed by the Legislature, after their titles have been publicly read before signing," a title is required for joint resolutions the same as for bills.

■ It has long since been settled that bills must contain the enacting clause prescribed in Sec. 29, of Art. 3 of the Constitution, have adequate titles, and contain but one subject. Vernon's Ann.St. Const. Sec. 35, Art. 3. Nowhere, however, do we find any express provision in the Constitution requiring that resolutions have titles. While joint resolutions, requiring the action of both houses thereon, and of the Governor, follow the same course in their passage as bills generally, Const. Art. 4, Sec. 15; and in some instances may have the force and effect of a law, they are not necessarily to be treated as laws. Mosheim v. Rollins, Tex.Civ.App., 79 S.W.2d 672, writ dismissed. The Constitution itself places bills and resolutions in separate

and distinct categories. Sec. 34, Art. 3; State v. Delesdenier, 7 Tex. 76, 94; Conley v. Texas Division of United Daughters of the Confederacy, Tex.Civ.App., 164 S.W. 24, 26; 39 Tex.Jur., Sec. 4, p. 12. Sec. 30, Art. 3, provides that: "No law shall be passed, except by bill," etc. Manifestly the enacting clause required for "all laws" could not apply to such resolution.

■ The purpose of the caption to a bill is to inform the public of the nature, character and content of the legislation proposed, and the members themselves; and to prevent inclusion in the body of the act, surreptitiously or otherwise, of matters not shown in the title, which, if shown, might not receive the support of the legislators. In brief, to put the public and the members of the Legislature on notice, by the title, what the act proposes ·to do. If it does that sufficiently it meets the constitutional requirements; otherwise it does not.

■ In the instant case, no title to the resolution being expressly required, if it contained as a part thereof adequate notice to the members of the Legislature and to the public of its character and content, and this was imparted to them in its consideration and passage, that was sufficient, we think, to comply with the spirit and purposes of the Constitution, as implied in Sec. 38 of Art. 3. The official endorsement on the resolution, which should be considered for this purpose was, "Granting National Biscuit Company permission to bring suit against the State of Texas." This was undoubtedly the "title" read to the Legislature in its consideration, passage, and signature by the presiding officers of the respective houses of the Legislature, and was sufficient to meet the requirement of Sec. 38, Art. 3, in so far as granting the consent of the State to be sued was concerned. By resolution is the proper method of granting such consent. State v. Isbell, 127 Tex. 399, 94 S.W.2d 423.

■ However, a different situation is presented with reference to that portion of the resolution undertaking to make an appropriation of moneys out of the Treasury. While such purported appropriation was made contingent upon recovery of a judgment, and was not an acknowledgment of any liability on the part of the State, it was, we think, invalid. The endorsement on the resolution, considered in lieu of a title, nowhere mentions an·appropria-

tion of money. There was nothing in said endorsement to show such purpose. A mere consent to sue the State, and an appropriation of money to pay a judgment are distinct and separate subjects; and if the rules applicable to bills be applied, the act is condemned by the provisions of Art. 3, Sec. 35 of the Constitution. Consent to sue the State admits no liability for the sum sued for. Brooks v. State, Tex.Civ. App., 68 S.W.2d 534, writ refused. An appropriation to pay, if unequivocal, is manifestly an admission of liability. While contingent in the instant case, we think it was so distinct from the consent given to sue, that it should at least have been embodied in the endorsement, on the resolution, serving the purpose of a caption, so as to apprize those interested of the purposes and content of the resolution itself.

The attempted appropriation would also appear to contravene Sec. 6 of Art. 8 of the Constitution, Vernon's Ann.St., providing that "No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law;" etc. While this provision was designed to safeguard moneys properly placed in the State Treasury from being unlawfully withdrawn therefrom; it also discloses a purpose of the framers of the Constitution to require that appropriations made by the Legislature be made specific, and that they be made by law. A mere attempted appropriation which names no sum, prescribes no limit as to amount, by resolution and not by law, manifestly does not meet the requirement.

Consent to sue the State and the attempted appropriation to pay the judgment, if any be rendered in appellant's favor, are, we think, clearly severable; and applying the provisions of Sec. 35, Art. 3 of the Constitution, the former can be sustained as valid even though the latter is void. Texas-Louisiana Power Co. v. City of Farmersville, Tex.Com.App., 67 S.W.2d 235; 39 Tex.Jur., Sec. 39, p. 84; 25 R.C.L., Sec. 87, p. 849.

The filing fees, amounting to $55,040, paid by appellant in 1909, and the franchise taxes paid for the years 1907 to 1917, aggregating $38,367, and here involved were exacted under the provisions of Chap. 23, Acts First·C.S. 30th Leg., approved May 16, 1907. The articles of R.C.S. 1911 here involved were 1314, 1318, 1320, 3837, 7394 and 7399. The 1907 act, above referred to, was held to be unconstitutional by the Supreme Court of the United States in Looney v. Crane Co., 245 U.S. 178, 38 S. Ct. 85, 62 L.Ed. 230. The appellant first secured a permit for a ten-year period to do business in Texas in 1899. It paid the filing fee required by the 1907 act in 1909, and paid its franchise taxes annually, those paid for the years 1914 to 1917 being paid under protest.

It now seems settled that because of the heavy penalties imposed against foreign corporations by the franchise tax laws, the power of the Secretary of State to forfeit their permits without judicial action for failure to pay such taxes, and the denial of access to the courts of the state as provided in Art. 7399, R.C.S. 1911, the payment of illegal taxes by a corporation to avoid such penalties amounts to a payment under implied duress, is not a voluntary payment, and does not bar a right of recovery of the illegal taxes so paid. Austin National Bank v. Sheppard, 123 Tex. 272, 71 S.W.2d 242; Atchison, T. & S. F. Ry. Co. v. O'Connor, 223 U.S. 280, 32 S.Ct. 216, 56 L.Ed. 436, Ann.Cas. 1913C, 1050; Gaar, Scott & Co. v. Shannon, 223 U.S. 468, 32 S.Ct. 236, 56 L.Ed. 510. After all of said taxes had been paid into the State Treasury and thereafter paid out upon appropriations by the Legislature, a suit to recover same, such as was authorized in the instant case would undoubtedly be a suit against the State, which could not be brought without its consent. This for the reason that if judgment be rendered in appellant's favor it would operate directly as a liability of the State and must of necessity be paid out of the State Treasury. Herring v. Houston Nat. Exch. Bank, 113 Tex. 264, 253 S.W. 813; Id., 114 Tex. 394, 269 S.W. 1031; San Antonio Ind. School Dist. v. State Board of Ed., Tex.Civ.App., 108 S.W.2d 445; 38 Tex.Jur., Sec. 36, p. 857. In so far, therefore, as a cause of action against the State is concerned on appellant's claim for repayment of the illegally exacted taxes after all of same had, over a period of years, been paid into the State Treasury, limitation would not begin to run against such a demand until the State had given its consent to be sued. State v. Elliot, Tex.Civ.App., 212 S.W. 695, 697, writ refused; Stanley v. Schwalby, 85 Tex. 348, 349, 19 S.W. 264; 28 Tex.Jur., Sec. 22, p. 99. Limitation did not, therefore, as such, operate against appellant's demand.

as undertaken to be enforced in the form and manner presented in this suit.

Even though such taxes be deemed to have been paid under implied duress, as held in Austin National Bank v. Sheppard, supra; and even though, as stated, after all of same had been placed in the State Treasury and expended by the State, the only method of recovery then was by a suit against the State necessitating its consent to be sued; the rights of the appellant are not, we think, referable solely to the status created after the expiration of this 10-year period in 1917. If during this 10-year period the appellant had an adequate remedy available to it to test the validity of the law involved, and which, if it had invoked it seasonably, would have relieved it from payment of such illegal taxes; but failed and neglected to invoke such remedy, and by such failure so to do lost it, and then became relegated solely to the relief it seeks in this case, it should not now be heard to say that its present suit against the State is the only remedy it had, and that it was not guilty of laches in its failure during such 10-year period to take any action to prevent the collection of the illegal tax.

During the 10-year period from 1907 to 1917, appellant could, notwithstanding such implied duress, at any time have had adjudicated the constitutionality of said law either in the State or Federal courts, without first obtaining the consent of the State to be sued. As stated in Anderson, Clayton & Co. v. State, 122 Tex. 530, 62 S.W.2d 107, 110: "The state's immunity from suit does not extend to a suit against state officers to enjoin the enforcement of an invalid law to the injury of the legal rights of a citizen," citing 25 R.C.L., Sec. 51, p. 414. See, also, Terrell v. Middleton, Tex.Civ.App., 187 S.W. 367, writ refused, 108 Tex. 14, 191 S.W. 1138; Stanley v. Schwalby, 85 Tex. 348, 19 S.W. 264; Conley v. Daughters of the Republic, 106 Tex. 80, 156 S.W. 197, 157 S.W. 937; 38 Tex.Jur., Sec. 37, p. 859.

Can appellant, even conceding that it paid franchise taxes under implied duress over such 10-year period, now be heard to say that it was not guilty of laches in not invoking the processes of the courts which were undoubtedly available to it, without special consent of the State to sue, at any time during said 10-year period, to test the validity of said law, just as was done by the Crane Company in its suit? In other words, did such implied duress justify it, because the outcome of its suit might not be favorable to it, in making no effort to enjoin payment of an illegal tax, though remedies by proper suit either in the State or Federal courts were available to it for 10 years, and it did not seek to do so? Is the doctrine of laches applicable to its conduct under such circumstances?

We have reached the conclusion that it was. The term "implied duress" as used in the decisions of the Supreme Court of the United States and of Texas relating to payment of such taxes, was not considered nor used in the sense that the tax payer was forbidden nor prevented from attacking by proper suit the validity of the law under which the tax was exacted. But as in said decisions is clearly manifest, it was used to contradistinguish such payment from "voluntary" payment in which latter event the tax payer is not entitled to recover the tax so paid. It would be an anomalous situation to hold that the fact that additional expenses would be incurred if plaintiff should lose its suit, constituted such duress as to excuse its failure to file such suit, where as was demonstrated in the suit filed by Crane Company involving the identical law, such plaintiff would have been successful had it so filed it.

Having reached the conclusion that the failure and neglect of appellant for 10 years to take any steps to have adjudicated the invalidity of the law under which it paid its taxes, during which time a remedy was continuously available to it constituted laches on its part, the next inquiry is whether it would now be inequitable to permit it to recover all of the taxes so paid. Had it acted seasonably,—for instance in 1909 when it paid filing fees of $55,040 under said law,—and established the invalidity of said law, it not only would not have been required over such 10-year period to pay to the State the taxes it now seeks to recover; but the Legislature would undoubtedly have amended said law or would have enacted a valid law, as it did following the decision of the Supreme Court of the United States in Looney v. Crane Company, which would have enabled the State to collect from such foreign corporations a tax commensurate with the value of their right or privilege of doing business in Texas during such time. On the other hand, if appellant be permitted to recover after such lapse of time, all of

the taxes it paid, though exacted under an invalid statute, the net result would be that it, by its own inaction when it could have sued, would have enjoyed the valuable right and privilege of doing business in Texas from 1907 to 1917 without payment therefor of any sum whatever, though domestic corporations were required to do so. The doctrine of laches is essentially a creature of equity; and where one who has a right or claim fails or neglects to assert it for such length of time or under such circumstances as to make it inequitable, because of such delay or inaction, to subsequently enforce it, no relief will be granted. 10 R.C.L., Secs. 142 and 147, pp. 395 and 400; 21 C.J., Sec. 211–214, pp. 210–216. And the fact that subsequent to 1917 appellant could not have sued the State without its consent does not prevent the State from asserting its conduct prior to that time as a defense to the suit here involved. We conclude, therefore, that the trial court properly denied appellant a recovery and its judgment will be affirmed.

Affirmed.