

# THE ATTORNEY GENERAL
## OF TEXAS

GROVER SELLERS             **AUSTIN 11, TEXAS**



Hon. Gibb Gilchrist, President                              This Opinion
Agricultural & Mechanical College of Texas                 Overrules Opinion
College Station, Texas                                     .#0-6017 & 0-5918
                                                           in so far as they
                                                           conflict

Dear Sir:                              Opinion No. 0-6903
                                       Re: Authority of Board of
                                           A. & M. College to purchase
                                           additional land for state
                                           experimental substation
                                           under facts submitted

     Your request for opinion has been received and carefully considered by this department. We quote from your request as follows:

"Yesterday I handed to you an Abstract of title and a suggested Form of Transfer of 165.81 acres of land which we have arranged to purchase adjoining the property already owned by Substation No. 7 near Spur, Dickens County, Texas. With this I am attaching a certified copy of the action of our Board of Directors dated July 28 authorizing the purchase.

"Payment for this land is to be made from the sales funds accruing from the sales from Substation No. 7 which we seek to enlarge. These funds are now deposited in a local bank and subject to payment by the Comptroller of this College upon proper authorization.

"Purchases of additional land for the substation have been made under the provisions of Articles 136 and 139, Revised Civil Statutes and have been made over the past 20 years under authorization of these laws and the opinion of the Attorney General dated May 23, 1925, Question 1.

"Will you kindly examine the Abstract and Transfer and if found satisfactory, give us your opinion thereon in accordance with the minute of the Board of Directors authorizing this purchase."

     We quote from the Minute you enclosed as follows:

"MINUTE No. 148 - 45

"The Texas Agricultural Experiment Station is hereby
authorized to purchase through the Spur Substation Sales
Fund approximately 165 acres of land comprising all the
Northeast Quarter (NE 1/4) of H. & G.N. Railway Company
Survey No. 247, Block No. 1, situated in Dickens County,
Texas, and adjoining the lands of Substation No. 7, sub-
ject to the following conditions:

"1. That the purchase be approved by the Attorney
General of Texas;

"2. That the land be appraised by at least two
disinterested qualified appraisers;

"3. That the land be surveyed by the County sur-
veyor or by a qualified licensed surveyor.

"4. That the title be approved by the Attorney
General; and

"5. That the purchase price be not in excess of
$50.00 per acre, based on the actual number
of acres, plus the cost of abstract and sur-
veying."

Articles 136, 137, 138 and 139, Vernon's Annotated Texas Civil
Statutes, read as follows:

"Article 136. Purposes

"There shall be established at such places in this
State as the board hereinafter named may deem proper,
experiment stations for the purpose of making experiments
and conducting investigations in the planting and growing
of agricultural and horticultural crops and soils, and
the breeding, feeding and fattening of livestock for
slaughter. Proceeds from the sale, barter or exchange of
crops raised on any of said experiment stations shall go
to defray the expenses of operating the same.

"Art. 137. Main station

"The experiment station located at the Agricultural
and Mechanical College in Brazos County which is in part
supported by the Federal Government shall remain at said
point as a permanent institution. It shall be known as
the Main State Experiment Station, and shall be under the
supervision of the Board of Directors of such college.
Such Board shall have the authority to accept from the
Federal Government such aid in its support as may be

provided by Congress.  All other experiment stations of whatever character, now or which may hereafter be established under the authority of this subdivision shall be considered sub-stations.

"Art. 138.  Supervising Board

"The Board of Directors of such college is vested with the authority, duties, and powers conferred by this subdivision upon said Board, and shall exercise a general supervision and direction over all sub-experiment stations established hereunder.

"Art. 139.  Powers of Board.

"The Board shall have power:

"1.  To establish sub-experiment stations at such places in this State as it shall deem proper, in addition to those now in operation.

"2.  To abandon or discontinue any sub-station which may become undesirable for experiment purposes, and if deemed necessary to establish others in their stead at such other places in the same county as it shall deem advisable.

"3.  To sell any land or other State property used in the operation of an experiment station when so abandoned, and to apply the proceeds of such sale in the purchase of other land and property for the establishment of experiment stations.  (Acts 1st C. S. 1913, p. 98)".

We quote from H. B. 173, Acts of the 49th Legislature of Texas, 1945 (Current appropriation act for A. & M. College and other state educational institutions) as follows:

". . . For the purpose of paying the expenses incurred for administering the Pure Feed Laws in accordance with the provisions of Articles Nos. 3872-3881, inclusive, of the Revised Civil Statutes of Texas, 1925, and amendments thereto, there is hereby appropriated to the experiment stations of the Agricultural and Mechanical College of Texas out of the receipts accrued to the credit of the Pure Feed Fund for each of the fiscal years ending August 31, 1946, and August 31, 1947, such amounts thereof as shall be necessary for the efficient administration and operation of said Pure Feed Laws.  The unexpended balance in said Fund may be used for any of the purposes herein appropriated for the Agricultural and Mechanical College, or for the purposes of conducting

experiments with feeds by the Texas Agricultural Experiment Station and for such other purposes as the Board of Directors of the Agricultural and Mechanical College of Texas may deem advisable, provided that any salaries paid or supplemented therefrom shall not exceed those paid for the same or similar services in the Main College." (Underscoring ours)

The Pure Feed Fund is a special fund in which there are deposited the tag and certification fees collected by A. & M. College on all feeding stuff used or sold in this State. The fees are paid to the Director of the Texas Agricultural Experiment Station at A. & M. and by him deposited in the State Treasury. Article 3875, V. A. C. S., provides in part as follows:

". . . So much of the inspection tax and penalties collected under this title shall be paid by the State Treasurer to the treasurer of the Texas Agricultural and Mechanical College as the director of the Texas Agricultural Experiment Station may show by his bills has been expended in performing the duties required by this title, but in no case to exceed the amount of the inspection tax and penalties received by the State Treasurer under this title. Id. Sec. 5"

We quote from the Opinion of the Attorney General of Texas, dated May 23, 1925, Vol. 273, p. 300, Letter opinions of the Attorney General of Texas, referred to in your letter as follows:

"Questions.

"1. 'Under the law are the directors of the experimental stations of the A. & M. College authorized to buy additional lands without the consent of the Legislature for the purpose of an experimental station?'

"2. 'If they have such authority, then are they authorized to use funds accruing from other experimental stations and divert the same to the purchase of lands for one particular experimental station?'

"Answers.

"Answering your first question you are advised that by the Acts of the First Called Session 1921, page 148, the powers originally held by the governing board of experimental substations were transferred to the Board of Directors of the Agricultural and Mechanical College. The provision of said Act which was intended as a substitution for Articles 14p and 14pp and 14q of the Texas Complete Statutes of 1920, is in the following language:

"'The Board of Directors of such college are vested with the authority, duties and powers conferred by this subdivision upon said Board and they shall exercise a general supervision and direction over all experiment stations established hereunder.'

"'The Board shall have power, first, to establish experiment stations at such places in this State as it shall deem proper in addition to those now in operation.'

"From the above it will be observed that the Board of Directors of the Agricultural and Mechanical College has the power to establish experiment stations and it would seem that such a power carries with it by necessary implication the power to acquire through purchase all lands which in the judgment of said Board may be deemed necessary to the perfect and complete establishment of said experimental stations and in event said Board should determine at any time after the experimental station has been located that additional acreage to be used in connection with said substation is needed for the purpose of completely establishing said substations and is required in the operation thereof, we see no reason why the Board would not have the power to make the purchase of said additional acreage. Therefore, answering your first question you are advised that the Board of Directors of the Agricultural and Mechanical College has the power and authority to acquire through purchase from the owner the two additional sections of land mentioned."

"Considering the second question above, you are advised that it seems Article 14ss which provides that the proceeds from the sale, barter or exchange of crops raised on any experimental station shall go to defray the expenses of operating the same, refers only to the particular experimental stations raising such crops and said provision prohibits the use of such proceeds to defray the expenses of operating any other station and said proceeds cannot be diverted to defray the expenses of operating another station. If the proceeds from the sale, barter, or exchange of crops raised on any one of said experiment stations should be available for the benefit of another station, the same could be used only to defray the expenses of operation and could not be used for the purpose of establishing a substation or could not be used for the purpose of purchasing additional acreage for one of the substations for the reason that <u>purchase money for additional acreage cannot be considered expenses of operation.</u> Therefore, the Directors of the Agricultural and Mechanical College do not have the authority

to use the proceeds or funds accruing from crops on other experimental stations and divert the same to purchase lands for another experimental station. (Underscoring ours)

"Having answered your first question in the affirmative, we deem it necessary, however, to add that the power and authority of said Board to make such a purchase cannot be exercised until funds are available for that purpose through an appropriation by the Legislature."

Opinion No. 0-3100 of this department holds that the statutes authorizing the Department of Public Safety of Texas to install and operate a police radio broadcasting station are broad enough to authorize the purchase of land upon which to establish the station. We quote from said opinion as follows:

"The statutes above quoted authorize the installation and operation of a police radio broadcasting system for the purpose of preventing crime, detecting and apprehending law violators, and for the directing of the activities and functions of the law enforcement agencies of the State, the counties and the municipalities. Thus, the Department of Public Safety could purchase suitable land on which to install and operate said radio station as a part of said authorized broadcasting system with moneys appropriated for the installation and equipment of such a system; first, if appropriations of the department are broad enough to cover such a purchase; and second, if such a purchase could be designated a necessary and incidental expense in carrying out the power granted to the department to install such a system.

"We think such a purchase is authorized by the General Appropriation Bill for the two-year period ending August 31, 1943, known as Senate Bill No. 423, p. 1231, 47th Leg. 1941, wherein it provides for an annual appropriation for the department of Public Safety, Main Division, designated as Item 106, as follows:

"'106. Postage, supplies, arms, wire communication, radio equipment, radio supplies, printing and contingent expenses; hospitalization and medical services when injured in line of duty, funeral expenses when death results from injuries received in line of duty; surety bonds, books, all necessary expenses of operating a police training school at Camp Mabry for training peace officers generally and members of this department, and any other necessary departmental expenses, including equipment. . . . . . . . . . . $55,950.00.'

"We have underscored the words 'any other necessary departmental expenses.' Under the emergency circumstances

quoted in your letter the purchase of <u>suitable</u> land appears
to be necessary and incidental to the establishment of an
efficient broadcasting system; suitable land in this respect
might possibly be regarded as part of the necessary radio
equipment, and the expense for obtaining same may be prop-
erly regarded as one of these necessary departmental expen-
ses provided for in the above quoted item 106.

"In the case of Herring v. Houston National Exchange
Bank, 269 S. W. 1031, wherein there was a purchase by the
Texas Prison Commission, without the approval of the Legis-
lature, of a mill and site, part of the consideration being
land on which the mill was situated, it was held and ap-
proved by the Texas Supreme Court that there was no viola-
tion of V.A.C.S. Supp. 1922, Art. 6184, forbidding the pur-
chase of 'land' for the prison system of Texas, without the
Legislature's approval, the purchase of the land being only
incidental to the purpose of establishing a mill and factory
for the said system as authorized by law.

"In the quoted Herring case, the Supreme Court of Texas,
in the face of an existing statute which forbade the purchase
of land by the Texas Prison Commission, unless approval of
the Legislature was first secured, looked upon the forbidden
purchase of land as incidental to the authority granted to
the Commission to establish a mill and factory and upheld
the act of the Commission. There exists no similar statute
which would limit the land purchasing power of the Depart-
ment of Public Safety. It appears, therefore, that the pro-
posed purchase of suitable land for the erection of an au-
thorized radio station by the Department of Public Safety
under said circumstances may with greater certainty be de-
termined as necessary and incidental to the power given it
to install and operate such a station.

"In the case of Terrill v. Sparks, 104 Tex. 191, 135
S. W. 519, the Supreme Court of Texas, in discussing an of-
ficial's authority under an appropriation bill, quoted from
Sutherland on Statutory Construction, as follows:

"'Whenever a power is given by statute, everything
necessary to make it effectual or requisite to at-
tain the end is implied. It is a well-established
principle that statutes containing grants of power
are to be construed so as to include the authority
to do all things necessary to accomplish the object
of the grant. The grant of an express power carries
with it by necessary implication <u>every other power</u>
<u>necessary and proper to the execution of the power</u>
<u>expressly granted.</u> Where the law commands anything

to be done, it authorized the performance of whatever may be necessary for executing its commands.'

"Furthermore, it is a well known fact, that broadcasting stations cannot be located on any sort of land. Quoting from your letter: 'For efficient transmission of messages by radio, it is necessary that the aerial and ground system be erected on certain types of soil. . . .' It is only reasonable to impute that the Legislature was sufficiently informed in these matters when it created the power in the Department of Public Safety to install and operate a radio station, and provided appropriations to install and operate same. In view of the fact that the Legislature did not attempt to specify where the station should be located and did not confine it to any particular ground, the Department of Public Safety was authorized necessarily to ascertain for itself suitable land for such purposes and to pay for same with appropriations granted it.

"Under the emergency circumstances of the case and in the light of the statutes authorizing the establishment of a police radio broadcasting system, it is our opinion that the purchase of suitable land on which to erect a radio station for the Department of Public Safety is necessary and incidental to the purposes of preventing crime, detecting and apprehending law violators, and for proper enforcement of the powers of your department, that the same is authorized, and the money appropriated in Item 106 of the Department of Public Safety appropriation (Senate Bill 423, p. 1231, 47th Leg. 1941) may be used for the purchase of said suitable land."

Also, to the same effect see Opinion No. O-6579 of this department.

We enclose herewith copies of Opinions Nos. O-3100 and O-6579 for your information.

Section 44 of Article III of the Texas Constitution provides:

"The Legislature . . . shall not . . . grant, by appropriation or otherwise, any amount out of the Treasury of the State, to any individual, on a claim, real or pretended, where the same shall not have been provided for by pre-existing law."

As shown above, the Board of Directors of A. & M. College is given the statutory power to establish experiment and sub-experiment stations as the Board sees proper. It is our opinion that such a broad power carries with it by necessary implication the power to acquire through purchase all lands which, in the judgment of the Board, may be deemed necessary to the establishment of such stations and in the event

the Board should determine at any time after the experimental station or sub-station has been located that such station or sub-station needs additional acreage for the purpose of more perfectly and more complete-ly establishing said station or sub-station, we think the Board would clearly be authorized to purchase such additional acreage for such pur-poses. We therefore hold that Articles 136 and 139, V. A. C. S., supra, constitute sufficient "pre-existing law" to support appropriations avail-able for the purchase of the lands inquired about.

It is our opinion that the Board of Directors of A. & M. Col-lege is authorized to purchase the lands inquired about and pay for same from any unexpended balances in the Pure Feed Fund.

In your letter you stated that "payment for this land is to be made from the sales funds accruing from the sales from Substation No. 7". We assume that the sales you are referring to are the sales of crops from the substation. The section of Article 136, dealing with such crop sales is as follows:

". . . Proceeds from the sale, barter or exchange of crops raised on any of said experiment stations shall go to defray the expenses of operating the same."

The 1925 opinion of this department, quoted above, specifically held that the purchase of additional acreage for an experimental farm could not be considered an expense of operation. We agree with this holding and think it is sound. We therefore accordingly hold that the Board of Directors of A. & M. College does not have authority to expend the sales funds of substation 7 (acquired from sales of crops from said sub-station) for the purchase of the lands inquired about.

Opinion Nos. O-5918 and O-6017 of this department are hereby overruled in so far as they conflict with this opinion.

If the Board desires to purchase the land inquired about from the Pure Feed Fund a new minute should be entered to that effect. If such is the Board's desire, please send us a copy of a new minute au-thorizing the purchase from the Pure Feed Fund and we will then write a separate title opinion on the title to said land. In the meanwhile we will hold the abstract until we hear from you further.

APPROVED NOV 8, 1945
/s/ Carlos C. Ashley
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY /s/ BWB
CHAIRMAN

Very truly yours
ATTORNEY GENERAL OF TEXAS
By /s/ Wm. J. Fanning
Wm. J. Fanning
Assistant

WJF:BT:LM