**Melinda PETTA, Appellant,**

v.

**Adrian RIVERA, Individually and in his Official Capacity as Texas Department of Public Safety Highway Patrolman and Texas Department of Public Safety, Appellees.**

No. 13–94–045–CV.

Court of Appeals of Texas,
Corpus Christi.

March 28, 1996.

Opinion Overruling Rehearing June 6, 1996.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Roy S. Dale, Katie Pearson Klein, William D. Mount, Jr., McAllen, for appellant.

Dan Morales, Attorney General, Austin, Jorge Vega, First Asst. Attorney General, Austin, Ann Kraatz, Assistant Attorney General, Chief, Law Enforcement Defense Div., Austin, Drew T. Durham, Deputy Attorney General for Criminal Justice, Austin, Demetri Anastasiadis, Assistant Attorney General, Austin, Richard M. Berry, Assistant County Attorney, Corpus Christi, for appellees.

Before SEERDEN, C.J., and YAÑEZ and CHAVEZ, JJ.

## OPINION

SEERDEN, Chief Justice.

This is a suit for personal injuries against the Texas Department of Public Safety (DPS) and its trooper, Adrian Rivera. Appellant, Melinda Petta, sued appellees, the DPS and Rivera, under the Texas Tort Claims Act, and she sued Rivera individually, for injuries she allegedly received following a high-speed chase. The trial court granted

two summary judgments for appellees. By seventeen points of error, Petta asserts that the court erred in granting the summary judgments. We reverse and remand.

■ In reviewing a summary judgment, we must accept as true evidence in the non-movant's favor, indulging every reasonable inference and resolving all doubts in the non-movant's favor. *Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

Following this standard, the facts, viewed in the light most favorable to appellant, as follows: About January 15, 1990, Melinda Petta and her two children, six-year-old Nicole and three-year-old David, were traveling in a Suburban on rural FM–70 towards Corpus Christi. At approximately 4:40 p.m., DPS Trooper Adrian Rivera stopped her for speeding. She gave her driver's license and proof of insurance to him upon request. He returned to his patrol car, and she closed her window due to the rain. Returning to the Suburban, he ordered her out of the vehicle. When she asked for a reason, he lost his temper, became agitated, irrational, threatening, and verbally and physically abusive. She locked her door, and he called her a " 'bitch.' " He advised her to " 'roll down the goddamned window,' " and he tried to yank her door open. She was afraid and remained inside. He stated that he was going to tow her vehicle with her and the children inside. He pulled his patrol car in front of the Suburban. He screamed at her, threatening to smash her driver's side window. He beat on her window at least 30 times with his nightstick. When she refused to roll down the window, he said, " 'I'll just have to kill you, bitch.' " He pointed his handgun at her, and she fled. As she left, Rivera shot at the Suburban with his handgun. He followed her, trying to run her off the road. At one point, he aimed his 12–gauge riot shotgun out his window at her in a threatening manner. He shot at her again as she drove to her home.

Petta alleged that the DPS was liable to her for severe mental anguish, grief, emotional pain, torment, indignation, shame, despair, suffering, and public humiliation proximately caused by the wrongful acts, omissions, and negligence of the DPS and its officer, Rivera, while acting within the scope of his employment. Additionally, she sued Rivera in his individual capacity for assault, battery, aggravated assault, reckless conduct, and for committing terroristic threats.

Appellees filed two summary judgment motions. In their first motion, they asserted that Petta did not give them actual notice of her claim as required by section 101.101(a)(1) of the Civil Practice & Remedies Code. Their second motion asserted 1) official immunity, 2) collateral estoppel, 3) that the court had sustained special exceptions that Petta could not sue the State for intentional tort, negligent infliction of emotional distress, and constitutional violations, 4) privilege, 5) sovereign immunity, 6) that the DPS was not liable for the intentional torts of its employees, and 7) that Rivera lacked intent to commit the tort of intentional infliction of emotional distress.

Petta filed responses to both summary judgment motions.

The trial court granted summary judgment, stating in its order that 1) Petta was collaterally estopped from suing appellees, 2) appellees' conduct did not constitute intentional infliction of emotional distress, 3) Rivera was immune from suit based on the doctrine of official immunity, and 4) appellees did not receive actual notice that plaintiff had received some injury within six months after the incident.

■ To prevail on a summary judgment motion, a movant must establish that there is no genuine issue concerning any material fact and that the movant is entitled to judgment as a matter of law. Tex.R.Civ.P. 166a(c); *Cathey v. Booth,* 900 S.W.2d 339, 341 (Tex.1995) (per curiam). A defendant who conclusively negates at least one of the essential elements of each of the plaintiff's causes of action or who conclusively establishes all of the elements of an affirmative defense is entitled to summary judgment. *Wornick Co. v. Casas,* 856 S.W.2d 732, 733 (Tex.1993); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

### The First Summary Judgment

■ By point thirteen, Petta asserts that the court erred in granting summary judg-

ment for appellees because they did not plead and verify in their answer that they did not receive notice of the claim as required by Rule 93(12).

Section 101.101(a) of the Civil Practice & Remedies Code provides that a governmental unit is entitled to receive notice of a claim against it not later than six months after the day that the incident giving rise to the claim occurred. Notice must reasonably describe 1) the damage or injury claimed, 2) the time and place of the incident, and 3) the incident. Section 101.101(c) provides that the formal notice requirements of section 101.101(a) "do not apply if the governmental unit has actual notice that death has occurred, that the claimant has received some injury, or that the claimant's property has been damaged." TEX.CIV.PRAC. & REM.CODE ANN. § 101.101(c) (Vernon 1986).

Rule 93(12), Texas Rules of Civil Procedure, provides, in relevant part:

> A pleading setting up any of the following matters, *unless the truth of such matters appear of record,* shall be verified by affidavit.
>
> \* \* \* \* \* \*
>
> 12. That notice and proof of loss or claim for damage has not been given as alleged. Unless such plea is filed such notice and proof shall be presumed and no evidence to the contrary shall be admitted. A denial of such notice or such proof shall be made specifically and with particularity.

TEX.R.CIV.P. 93(12) (emphasis added).

Petta alleged that the DPS had actual notice of her claims and injuries from the date of the incident due to its investigation of the incident, and that this actual notice satisfied section 101.101. In their second-amended answer, appellees denied that they received actual notice of injury based upon their internal investigation report. The record included a copy of the report. We hold that appellees' denial that they received notice of Petta's claims appeared of record. This being the case, they were not required to verify their answer. We overrule point thirteen.

By points one and three, Petta asserts that the court erred in granting summary judgment for appellees because a fact issue exists whether the DPS had actual knowledge that she received some injury under section 101.101(a)(1) of the Tort Claims Act.

◼ The Texas Supreme Court has held that actual notice to a governmental unit requires knowledge of (1) a death, injury, or property damage, (2) the governmental unit's alleged fault producing or contributing to the death, injury, or property damage, and (3) the identity of the parties involved. *Cathey,* 900 S.W.2d at 341.

◼ Petta's claims against appellees amount to a claim for negligent infliction of emotional distress. In *Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993), the supreme court held that there is no general duty in Texas not to negligently inflict emotional distress. A claimant may recover mental anguish damages only in connection with a defendant's breach of some other legal duty. *Boyles,* 855 S.W.2d at 594. In *City of Lancaster v. Chambers,* 883 S.W.2d 650 (Tex.1994), the supreme court discussed the duty owed by peace officers engaging in a high-speed chase. In that case, Bradley Chambers received serious injuries when police were chasing a motorcycle in which he was riding as a passenger. His parents sued several police officers for common-law negligence and deprivation of rights under 42 U.S.C. § 1983. The trial court granted summary judgment on both claims. On appeal, the police officers contended that they were not negligent as a matter of law because they owed no duty to Bradley. The supreme court stated that article 6701d, section 24(e) (Vernon 1977) provides that authorized drivers of emergency vehicles have " 'the duty to drive with due regard for the safety of *all persons.*' " The court stated that the scope of that duty included Bradley. *Chambers,* 883 S.W.2d at 653.

◼ Appellees' summary judgment proof included the DPS's investigation and report of the incident. It showed that after Rivera stopped Petta's vehicle, he became upset with her because she would not get out of the vehicle or roll down her window. He called her a bitch and tried to break her driver's side window. He pointed his gun at her face, and said, " 'Then I'll just have to kill you, Bitch!' " At that point, she fled. He pur-

sued her at speeds reaching 80 to 90 mph. He tried to pass her, cut her off, and run her off the road. She was worried that she would get into a wreck and injure the children. He fired two shots at her. When he fired the first shot, her son started groaning and shaking. She stated in her affidavit, "I kept trying to reassure my children, but they were terrified." Rivera chased her all the way to her residence. When she reached her residence, her children were crying and screaming real bad. The male child was in a hysterical state.

Petta's and the children's reactions suggest that the DPS had knowledge of an injury. The evidence showed that the DPS's alleged fault contributed to or produced the alleged injuries and that the DPS knew the identity of the parties involved. Therefore, the DPS had actual notice under section 101.101(a) of the Tort Claims Act. *See Cathey,* 900 S.W.2d at 341. We hold that the trial court erred by granting appellees' first summary judgment motion. We sustain points one and three.

### The Second Summary Judgment

By point fifteen, Petta asserts that the court erred in granting summary judgment because appellees waived official immunity as an affirmative defense.

Appellees stated in the second-amended answer that Rivera was immune from suit under the doctrine of official immunity. On appeal, Petta asserts that Rivera waived his official-immunity defense because the second-amended answer was not verified.

In *Pledger v. Schoellkopf,* 762 S.W.2d 145 (Tex.1988) (per curiam), the supreme court stated that "When capacity is contested, Rule 93(2) requires that a verified plea be filed anytime the record does not affirmatively domonstrate [sic] the plaintiff's or defendant's right to bring suit or be sued in *whatever* capacity he is suing . . . ." *Pledger,* 762 S.W.2d at 146. Immunity is a major issue in any tort suit brought against the State of Texas or its officials. In the instant case, the record affirmatively demonstrates the State's assertion that immunity protected Rivera from suit. Therefore, Rule 93 does not require appellees to verify their answer. We overrule point fifteen.

By point five, Petta asserts that the trial court erred in granting summary judgment based upon official immunity because a fact issue existed whether Trooper Rivera's actions were ministerial.

Official immunity in Texas is an affirmative defense to negligence claims against state employees that applies when employees exercise discretion in good faith while acting within the scope of their official authority. *K.D.F. v. Rex,* 878 S.W.2d 589, 597 (Tex.1994); *Texas Dep't of Pub. Safety v. Perez,* 905 S.W.2d 695, 698 (Tex.App.—Houston [14th Dist.] 1995, no writ). The purpose of the official-immunity doctrine is to protect public officers from civil liability for conduct that would otherwise be actionable. *Chambers,* 883 S.W.2d at 654.

Concerning discretionary duty, if an action involves personal deliberation, decision, and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial. *Chambers,* 883 S.W.2d at 654; *Wyse v. Department of Pub. Safety,* 733 S.W.2d 224, 227 (Tex.App.—Waco 1986, writ ref'd n.r.e.).

*Chambers,* like the case now before us, involved a high-speed chase of a suspect. The *Chambers* court stated that the decision to pursue a particular suspect will fundamentally involve the officer's discretion because the officer must first elect whether to undertake pursuit. Beyond that decision, "a high speed pursuit involves the officer's discretion on a number of levels, including, which route should be followed, at what speed, should back-up be called for, and how closely should the fleeing vehicle be pursued." *Chambers,* 883 S.W.2d at 655. The court held that the police officers engaging in a high-speed chase was a discretionary act.

In the instant case, the evidence showed that Trooper Rivera stopped Petta for an alleged speeding violation. She left the scene without his consent, and he elected to give chase. We hold that Rivera's engaging in the high-speed chase was a discretionary act. *See Chambers,* 883 S.W.2d at 654–55.

▮ Concerning good faith, the *Chambers* court held that an officer acts in good faith in a pursuit case if "a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend the suspect outweighed a clear risk of harm to the public in continuing the pursuit." *Chambers,* 883 S.W.2d at 656 [footnote omitted]; *Cameron County v. Alvarado,* 900 S.W.2d 874, 880 (Tex.App.—Corpus Christi 1995, writ dism'd .w.o.j.). The court derived this test from federal immunity law and stated

> [W]e look to whether a reasonable official could have believed his or her conduct to be lawful in light of clearly established law and the information possessed by the official at the time the conduct occurred. Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."

*Chambers,* 883 S.W.2d at 656 (quoting *Swint v. City of Wadley,* 5 F.3d 1435, 1441–42 (11th Cir.1993). The "could have believed" aspect of the good-faith test means that in order to achieve summary judgment, an officer must prove that a reasonably prudent officer might have believed that the pursuit should have been continued. It does not mean that an officer has to prove that it would have been unreasonable to stop the pursuit; nor must the officer prove that all reasonably prudent officers would have continued the pursuit. *Chambers,* 883 S.W.2d at 656–57; *Perez,* 905 S.W.2d at 699–700. To controvert the officer's summary judgment proof on good faith, a plaintiff must do more than show that a reasonably prudent officer could have decided to stop the pursuit; the plaintiff must show that " 'no reasonable person in the defendant's position could have thought the facts were such that they justified defendant's acts.' " *Chambers,* 883 S.W.2d at 657 (citing *Malley v. Briggs,* 475 U.S. 335, 341, 106 S.Ct. 1092, 1096, 89 L.Ed.2d 271 (1986) (noting that " 'if officers of reasonable competence could disagree on this issue, immunity should be recognized' ")).

Appellees' proof included the investigation and report of the incident. Trooper Rivera's statement showed that he believed that he followed proper procedures for the events involving the traffic stop, contact, pursuit, shooting, and apprehension of Petta. DPS Sgt. Michael Williams stated in his memo that he believed Trooper Rivera was within the law relating to his use of deadly force. DPS Lt. Burton Christian[1] stated in his memo that Rivera's discharge of firearms appeared to be justified. He also stated,

> No doubt the pursuit was dangerous; however, when would a trooper ever terminate a pursuit by breaking off the chase? While only the individual officer on the scene can make this determination, there are many factors to consider, such as, knowledge of the violator (had the DL),[2] type of violation (speeding, fleeing, no articulable reasonable suspicion of any other violation), innocent third party in violator's vehicle (small children), direct order not to fire by a commanding officer. In my opinion, if there was ever a proper case for breaking off pursuit this was the case.

Petta's summary judgment proof included memos from DPS Cpt. Oren Moore and DPS Lt. Christian.[3] Moore stated that there was no reason to continue the pursuit nor was there justification to discharge his weapon at the vehicle. Christian stated that Rivera should have considered breaking off the pursuit in lieu of disobeying the order not to shoot when the pursuit became this dangerous.

This evidence showed that Rivera should have considered ending the pursuit and that the officers disagreed whether he should have discharged his weapon at Petta's vehicle. We hold that a fact issue exists whether a reasonably prudent officer, under the same or similar circumstances, could have believed that the need to immediately apprehend Petta outweighed a clear risk of harm to the public in continuing the pursuit. *See Cham-*

---

**1.** This memo was dated March 22, 1990.

**2.** Christian is making reference that Rivera allegedly possessed Petta's driver's license when she fled the scene.

**3.** This memo was dated March 27, 1990.

*bers,* 883 S.W.2d at 656; *Alvarado,* 900 S.W.2d at 880.

 Finally, officers must act within the scope of their authority to enjoy immunity from suit. The *Chambers* court stated that an official acts within the scope of authority when discharging the duties generally assigned to that official. *Chambers,* 883 S.W.2d at 658. The fact that the specific act forming the basis of the suit may have been wrong or negligent does not mean an official was acting outside the scope of authority. *Harris County v. Ochoa,* 881 S.W.2d 884, 888 (Tex.App.—Houston [14th Dist.] 1994, writ denied). In *Chambers,* the court held that the officers were acting within the scope of their authority because they were on duty, in a squad car, pursuing a suspect.

In the instant case, the evidence showed that Rivera was on duty, in a squad car, and had stopped Petta for speeding. After she fled the scene, he gave chase and discharged his weapon. We hold that Rivera was acting within the scope of his authority. *See Chambers,* 883 S.W.2d at 658.

Since Rivera failed to show that he acted in good faith when pursuing Petta, he did not establish his affirmative defense of official immunity as a matter of law. We sustain point five.

By point fourteen, Petta asserts that the trial court erred in granting summary judgment on sovereign immunity because Rivera and the DPS waived this affirmative defense by not specifically pleading it under Rule 94.

 The doctrine of sovereign immunity is an affirmative defense. *Davis v. City of San Antonio,* 752 S.W.2d 518, 519 (Tex.1988); *University of Texas–Pan Am. v. Valdez,* 869 S.W.2d 446, 449 (Tex.App.—Corpus Christi 1993, writ denied). Rule 94 of the Texas Rules of Civil Procedure requires that in pleading to a preceding pleading, a party "shall" set forth affirmatively any matter constituting an avoidance or affirmative defense.

 Appellees' second-amended answer stated that "Rivera excepts to Plaintiffs' Second Amended Petition wherein plaintiffs sue him in his official capacity. Such suits are in actuality, claims against the State of Texas and barred by sovereign immunity." We hold that this allegation gave fair notice to Petta that appellees were claiming sovereign immunity as an affirmative defense. We overrule point fourteen.

 By point six, Petta asserts that the trial court erred in granting summary judgment for appellees because a fact issue existed whether Rivera was privileged to use "actual force" against her while performing his duties.

Penal Code Section 9.51 allows the use of force and deadly force while making an arrest or search.

Petta included Rivera's deposition excerpts as part of her summary judgment proof. In his deposition, Rivera's testimony showed that the computer did not indicate that Petta was a dangerous person. His testimony further showed that Petta did not try to physically cause any harm to him until the chase began. When he fired at her tire, he did fear a threat coming to him or to any officers involved.

Cpt. Moore's memo showed that Rivera acknowledged that he received Moore's instructions not to shoot with children in the vehicle and that nothing changed to rescind that order during the pursuit. He further stated that Rivera was not justified in discharging his weapon at Petta's vehicle.

The State's evidence showed that Rivera was justified in discharging his weapon. A fact issue exists whether Rivera was privileged in discharging his weapon at Petta's vehicle. We hold that appellees did not meet their burden to show that Rivera's privileged use of firearms under Texas law protected him from suit.

 In the second summary judgment motion, the DPS asserted sovereign immunity based generally upon Rivera's privileged use of force. Under the waiver of sovereign immunity in section 101.021, Civil Practice & Remedies Code, the State is liable only to the extent that its employee is liable. Since a fact issue exists whether Trooper Rivera was privileged to use force, and since the DPS relied on privilege to shield itself from liabili-

ty, a fact issue exists whether the DPS is entitled to sovereign immunity against Petta's claims. We hold that the trial court erred if it granted summary judgment on the basis of privilege or sovereign immunity. We sustain point six.

By point four, Petta asserts that the court erred in granting summary judgment for appellees because a fact issue existed whether collateral estoppel barred her suit. By point sixteen, she asserts that appellees waived collateral estoppel as an affirmative defense by not specifically pleading it.

In their second-amended answer, appellees did not assert collateral estoppel as a defense or an affirmative defense to Petta's suit. However, one of appellees' grounds for summary judgment was that collateral estoppel barred Petta's suit. In her response to appellees' summary judgment motion, Petta asserted that appellees waived any defense based upon collateral estoppel, pointing out that a party must plead it under Rule 94.

Collateral estoppel is an affirmative defense that a party must plead and prove. TEX.R.CIV.P. 94. By properly objecting to appellees' failure to plead collateral estoppel, Petta preserved error. The trial court could not have properly granted summary judgment on the basis of collateral estoppel. *See Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991) (unpleaded affirmative defense may be basis for summary judgment when raised in motion, and adversary fails to object in written response or before rendition of judgment to no rule 94 pleading). We sustain points four and sixteen.

By point seventeen, Petta asserts that the court erred by imposing sanctions against herself and her attorneys, Dale & Klein, because no basis supported the imposition, and the amount imposed was unreasonable.

On April 22, 1993, appellees filed a motion in which they requested the trial court to order the plaintiffs to submit to a psychological examination under Rule 167a, Texas Rules of Civil Procedure. On April 30, 1993, the court heard the motion and announced that appellees were entitled to an independent mental examination. It requested that counsels for both parties submit to the court the names of three persons (one of whom could perform the examination). At a hearing on June 3, 1993, appellees's counsel informed the trial court that "we are not going to be able to agree on a psychiatrist." He informed the court that appellees had designated Dr. Bruce Perry, a psychiatrist, as number one on the list. He asked the court for Dr. Perry, and the court complied with that request.

In July 1993, appellees filed a motion for sanctions in which they alleged that pursuant "to Court order" Dr. Perry's office had contacted appellant's law firm to schedule an appointment to examine Petta and her two children. However, on the day before the appointment, two of the three plaintiffs nonsuited, and none of the plaintiffs appeared for the scheduled appointment. This caused a $2,100 expense in connection with the missed appointment. Appellees requested the trial court to direct appellant to pay $2,100 to Dr. Perry and to reschedule the appointment. The trial court ordered that appellant's law firm and appellant, Melinda Petta, were jointly and severally liable for Dr. Perry's $2,100 fee and that payment of the fee be made as a discovery sanction.

Rule 215(2)(b) provides that if a party fails to obey an order including an order made under Rule 167a, the court in which the action is pending may, after notice and hearing, make orders in regard to the failure as are just. In *TransAmerican Natural Gas Corp. v. Powell*, 811 S.W.2d 913 (Tex.1991), the supreme court stated that a direct relationship must exist between the offensive conduct and the sanction imposed, and just sanctions must not be excessive. *Powell*, 811 S.W.2d at 917.

In the instant case, the record does not include an order directing Petta or her children to appear at Dr. Perry's office by scheduling an appointment for a psychiatric evaluation. Without an order, Petta and her children were not required to attend the appointment. That being the case, a direct relationship does not exist between the alleged offensive conduct and the sanction imposed. We hold that the trial court abused

its discretion when it imposed the $2,100 sanction. We sustain point seventeen.

By points eight through eleven, Petta asserts that the trial court erred in granting summary judgment for appellees because Albert Rodriguez's affidavit was not adequate as summary judgment evidence.

Appellees assert that Rodriguez's testimony was used to establish that Trooper Rivera's actions were taken in good faith. There is no testimony from Rodriguez in the record before us. We overrule points eight through eleven.

Due to our disposition of the preceding points of error, we need not answer the remaining points. TEX.R.CIV.P. 90(a).

We REVERSE the judgment and REMAND the case to the trial court.

## OPINION ON MOTION FOR REHEARING

On rehearing, we address two points raised in appellees' motion for rehearing. Appellees' chief contention is that the case of *City of Lancaster v. Chambers*, 883 S.W.2d 650 (Tex.1994) should control our decision in this case. We disagree. *Lancaster* (as well as *State of Texas v. McGeorge*, No. 14–94–01064–CV, 925 S.W.2d 105 (Tex.App.—Houston [14th Dist.] 1996, n.w.h.), also cited by appellees) is based solely on common law negligence. That is not the sole basis of appellant's claim in this case.

■ Overruling their decision in *St. Elizabeth's Hosp. v. Garrard*, 730 S.W.2d 649 (Tex.1987), the supreme court concluded in *Boyles v. Kerr* that there exists no general duty not to negligently inflict emotional distress on another. Instead, a claimant should receive compensation for mental anguish damages only in connection with a defendant's breach of some other duty imposed by law. *Boyles*, 855 S.W.2d at 596, 597. In other words, negligent infliction of emotional distress is no longer recognized as an independent tort, but compensation for emotional distress is recoverable as an element of damages arising from the defendants' breach of some other legal duty owed the plaintiff. *Boyles*, 855 S.W.2d at 597. The Court stated,

By overruling the language of *Garrard*, ... [w]e ... are not imposing a requirement that emotional distress manifest itself physically to be compensable.... Where emotional distress is a recognized element of damages for breach of a legal duty, the claimant may recover without demonstrating a physical manifestation of the emotional distress.

*Boyles*, 855 S.W.2d at 597, 598.

■ In this case, among other actions and causes of actions raised by appellant both in her pleadings and the evidence presented, she alleges that Mr. Rivera was guilty of assault and battery by verbally threatening to kill Mrs. Petta, pointing a handgun and shotgun at her, calling her a bitch and other profanities, threatening to smash her car window, beating excessively on her window with his nightstick, shooting at Plaintiff's car with a handgun and trying to run Plaintiff off the road. These acts constitute assault and battery.

Rivera knowingly or recklessly threatened Plaintiff with imminent bodily injury by his actions. Further, Rivera knowingly or recklessly caused physical contact with plaintiff when Rivera knew or should have reasonably believed that Plaintiff would regard the contact as offensive or provocative.

In citing numerous Texas Supreme Court examples of other duties the breach of which supports recovery of mental anguish, the court specifically cites *Fisher v. Carrousel Motor Hotel, Inc.*, 424 S.W.2d 627 (Tex.1967) which held that an intentional snatching of a patron's dinner plate by the manager of the motor hotel's club in a loud and offensive manner was sufficient to constitute a battery for which mental suffering damages are recoverable without the necessity of showing physical injury. In discussing the justification for this rule Justice Greenhill stated that damages for mental suffering are recoverable without the necessity for showing actual physical injury in a case of willful battery because the basis of that action is the unpermitted and intentional invasion of the plaintiff's person and not the actual harm done to the plaintiff's body. Restatement of Torts 2d § 18. Personal indignity is the essence of an

action for battery; and consequently the defendant is liable not only for contacts which do actual physical harm, but also for those which are offensive and insulting.

The allegations and evidence thus presented clearly establish a cause of action separate and apart from a simple negligent infliction of emotional distress.

Next, we address appellees' contention that we erred by addressing only the points set forth in the trial court's September 30, 1993 summary judgment order. Appellees filed two summary judgment motions. The first, filed in May 1993, concerned section 101.101 of the Texas Civil Practice & Remedies Code. The second was filed in June 1993 and asserted several grounds for summary judgment, including immunity. On August 20, 1993, the trial court signed an order stating that it had heard appellees' "Motion for Summary Judgment." The order did not indicate which summary judgment motion the court had heard, and it did not state the basis upon which the trial court granted summary judgment.

 Under Texas procedure, appeals are allowed only from final orders or judgments. *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 272 (Tex.1992); *North East Indep. Sch. Dist. v. Aldridge,* 400 S.W.2d 893, 895 (Tex.1966). Unless a statute specifically authorizes an interlocutory appeal, Texas appellate courts have jurisdiction only over final judgments. *Cherokee Water Co. v. Ross,* 698 S.W.2d 363, 365 (Tex.1985) (orig. proceeding); *Aldridge,* 400 S.W.2d at 895. Section 51.014(5) of the Texas Civil Practice & Remedies Code specifically allows appeal of an interlocutory order that, "denies a motion for summary judgment that is based on an assertion of immunity by an individual who is an officer or employee of the state or a political subdivision of the state. TEX.CIV. PRAC. & REM.CODE ANN. § 51.014(5) (Vernon Supp.1996). However, in this case, the order did not state which summary judgment motion it pertained to. That being the case, the order is interlocutory and not appealable under section 51.014(5).

On September 30, 1993, the trial court signed an order in which it indicated that it had heard both summary judgment motions.

(This order did state the specific grounds upon which the trial court granted the order.) Since this order disposed of both summary judgment motions, it is considered final and appealable. *See Tipps,* 842 S.W.2d at 272; *Aldridge,* 400 S.W.2d at 895.

By a motion to supplement the motion for rehearing, appellees bring to our attention *State v. McGeorge,* 925 S.W.2d 105 (Tex. App.—Houston [14th Dist.] 1996, n.w.h.). We have considered this case and believe that it does not control the case now before us. We overrule both motions for rehearing in their entirety.