**TEXAS SOUTHERN UNIVERSITY,**
**Appellant,**

v.

**ARASERVE CAMPUS DINING**
**SERVICES OF TEXAS,**
**INC., Appellee.**

No. 01–98–00366–CV.

Court of Appeals of Texas,
Houston (1st Dist.).

Nov. 20, 1998.

Rehearing Overruled Dec. 23, 1998.

Rande K. Herrell, Austin, for Appellant.

Jeffrey C. Londa, Stephen H. Dimlich, Jr., Houston, for Appellee.

Before Justices COHEN, HEDGES, and TAFT.

## OPINION

MURRY B. COHEN, Justice.

This is an interlocutory appeal from an order denying appellant's plea to the jurisdiction based on sovereign immunity. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 51.014(a)(8) (Vernon Supp.1998). We modify the order to dismiss Araserve's tort and constitutional claims, and we affirm the order, including that portion denying sovereign immunity on Araserve's contract claims, as so modified.

### I. Background

We construe Araserve's pleadings in its favor and take those allegations as true. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex.1993).

In 1981, TSU and Araserve's predecessor contracted for Araserve to provide food services for TSU. Araserve provided $122,778.50 in food and services that TSU requested but refused to pay for.

Araserve sued, asserting claims for: (1) contract; (2) quasi-contract (quantum meruit, unjust enrichment, and detrimental reliance); (3) tort (common-law fraud, misrepresentation, and negligent misrepresentation); and (4) constitutional violations (due process, due course of law, and equal protection violations[1]). In its tort and constitutional law claims, Araserve sought money damages for the value of the goods and services TSU had

accepted. Araserve did not seek injunctive or declaratory relief.

TSU filed a jurisdictional plea based on sovereign immunity. The trial judge denied TSU's plea and abated the cause while the Texas Supreme Court considered *Texas Southern University v. Federal Sign*[2] and *Alcorn v. Vaksman*.[3] After the Supreme Court decided *Federal Sign*, TSU again asserted its jurisdictional plea, and the trial judge again denied it. TSU appeals.

### II. Contract and Quasi–Contract Claims

■ TSU contends sovereign immunity from suit bars Araserve's contract and quasi-contract claims.

■ As a general rule, the State cannot be sued for damages without its express permission. *Federal Sign v. Texas S. Univ.*, 951 S.W.2d 401, 405 (Tex.1997). Even if the State consents to be sued, it generally remains immune from liability. *Id.* TSU is a State agency entitled to sovereign immunity. *Id.* TSU concedes it waived immunity from liability by contracting with Araserve, but TSU contends it remains immune from suit.

The precise issue here is whether a government contractor that fully performs its contract must obtain legislative consent to sue for agreed payment. Both parties contend this case is controlled by *Federal Sign v. Texas Southern University*.

### A. *Federal Sign v. Texas Southern University*

TSU accepted Federal Sign's bid to build and deliver basketball scoreboards. *See Federal Sign*, 951 S.W.2d at 403. After Federal Sign began work, but before completion or delivery, TSU contracted with another company. *Id.* TSU asserted sovereign immunity from Federal Sign's breach of contract suit, but the judge granted judgment for Federal Sign. *Id.* The court of appeals and the Supreme Court held the suit was barred by sovereign immunity.

---

1. U.S. CONST. amend. V, XIV; TEX. CONST. art. I, §§ 3, 19.

2. 889 S.W.2d 509 (Tex.App.—Houston [14th Dist.] 1994), *aff'd*, 951 S.W.2d 401 (Tex.1997).

3. 877 S.W.2d 390 (Tex.App.—Houston [1st Dist.] 1994, writ denied).

The Supreme Court recognized that sovereign immunity is a court-made rule. *Id.*, 951 S.W.2d at 416 (Hecht, J., concurring), 417 (Enoch, J., dissenting). Nevertheless, it held that only the legislature can waive sovereign immunity.

The six-justice majority held:

Therefore, when the State contracts with private citizens, the State waives only *immunity from liability*. However, a private citizen must have legislative consent to sue the State on a breach of contract claim. The act of contracting does not waive the State's *immunity from suit*. Accordingly, we expressly overrule any cases that hold to the contrary.

*Id.* at 408 (emphasis in original). The majority opinion six times stated that only the legislature may waive sovereign immunity from suit. *Id.* at 405, 408, 409, 412. However, the majority also stated:

We hasten to observe that neither this case nor the ones on which it relies should be read too broadly. We do not attempt to decide this issue in any other circumstances other than the one before us today. There may be other circumstances where the State may waive its immunity *by conduct other than simply executing a contract* [4] so that it is not always immune from suit when it contracts.

*Id.* at 408 n. 1 (emphasis added).

Four justices who joined the majority opinion also concurred, emphasizing that the issue before the Court was narrow: whether "the State, merely by entering into a contract for goods and services, waives immunity from suit for breach of the contract *before the other party has tendered performance.*" *Id.* at 412 (Hecht, J., concurring) (emphasis added). The concurring opinion stated:

We do not address whether the State is immune from suit on debt obligations, such as bonds. Second, at the time of TSU's breach (as found by the jury), Federal Sign had not performed. To be sure, Federal Sign purchased equipment for the contract that it could not otherwise use and lost profits it had bargained for. But

Federal Sign never tendered performance, never performed services on TSU's property, and never delivered TSU any materials. Would the result be different if Federal Sign had already installed the scoreboards and TSU refused to pay the agreed price? Or if TSU had accepted the scoreboards, acknowledged that Federal Sign had fully complied with the contract, but refused to pay the agreed price? Or if TSU refused to pay in order to force Federal Sign to make a concession on another contract? We do not attempt to decide such hypotheticals today, but they do suggest that the State may waive immunity by conduct other than simply executing a contract, so that it is not always immune from contract suits.

Categorical statements in the Court's opinion must be read in this context. For example, the Court states that "when the State contracts with private citizens, the State waives only *immunity from liability.*" *Ante* at 406. Later it states: "We hold that sovereign immunity from suit without legislative consent applies to contract claims against the State." *Ante* at 412. These statements do not apply to all contracts—state bonds, for example—or to all circumstances. In short, today's decision does not hold that the State is always immune from suit for breach of contract absent legislative consent; it holds only that the mere execution of a contract for goods and services, without more, does not waive immunity from suit.

*Id.* at 412–13 (emphasis in original). However, in explaining why the Court would not abolish sovereign immunity from all contract suits, the concurring opinion then set out four "compelling reasons" to defer to the legislature to waive immunity from suit: (1) the handling of contract claims against the government involves complex policy choices (and the legislature has repeatedly considered but rejected waiving all immunity from contract suits); (2) not all factors that weigh in determining the State's contract liability can be assessed in a judicial proceeding (for example, whether the State must honor long-

---

**4.** Obviously, this means by conduct other than legislative action. Otherwise, there would have

been no reason to say anything at all. That was clearly the law before *Federal Sign.*

term contracts when public needs or administrations change); (3) even if immunity from contract suits were abolished, successful plaintiffs could still not be paid without legislative appropriation; and (4) the legislature has long provided for redress by allowing petitions for consent to sue the State for contract breach. *Id.* at 413–15. The concurring opinion concluded with the following:

> While the judiciary is better suited to solve factual and legal issues in contract disputes, the legislature is not incapable of considering such issues, and is better suited to deciding the kinds of political issues that also attend claims against the State. For this Court to invade matters so laden with political policy concerns and, by abolishing immunity from suit, to disrupt the procedures the legislature has fashioned, would be not only contrary to our precedents but also unsound jurisprudence.

*Id.* at 415 (Hecht, J., concurring).

### B. The Parties' Interpretation of *Federal Sign*

TSU reads *Federal Sign*'s majority opinion broadly, concluding "a private citizen must have legislative consent to sue the State on a breach of contract claim." *Federal Sign*, 951 S.W.2d at 408. It relies also on the concurring opinion's compelling reasons to leave sovereign immunity's waiver to the legislature alone. *Id.* at 413–15. In contrast, Araserve relies upon the portion of *Federal Sign*'s concurring opinion (and the majority opinion's footnote one) suggesting "the State may waive immunity by conduct other than simply executing a contract." *Id.* at 412–13 (Hecht, J., concurring). As another court recently asked, do we follow the *Federal Sign* majority opinion's broad language or the concurring opinion's strong suggestion? *See Alamo Community College Dist. v. Obayashi Corp.*, 980 S.W.2d 745, 748 (Tex.App.—San Antonio Aug. 31, 1998, pet. filed) (designated for publication). What of the fact that both opinions leave open the possibility of waiver without legislative approval, while

also reaffirming decades of law that only the legislature may or should waive immunity from contract suits?

### C. Waiver by Conduct Beyond the Contract's Execution

We agree with the *Obayashi* court that *Federal Sign*'s holding was only that sovereign immunity from suit is not waived merely by executing a contract. *Obayashi*, op. at 748. Accordingly, we hold TSU did not waive its sovereign immunity from suit *merely by executing* the contract. *See id.* That does not decide this case, of course, because Araserve did more than tender performance—it performed, fully and repeatedly. Neither *Federal Sign* nor the three Supreme Court opinions on which it relied—*Missouri Pacific Railroad Company v. Brownsville Navigation District*,[5] *W.D. Haden Company v. Dodgen*,[6] and *Herring v. Houston National Exchange Bank*[7]—denied relief when the plaintiff fully performed a contract, the State refused to pay, and the plaintiff sued for the value of the accepted goods and services. We examine applicable precedent below.

#### 1. Other Supreme Court Precedent

As the *Federal Sign*Court implied, there is no Supreme Court precedent directly addressing the situation here. *See Federal Sign*, 951 S.W.2d at 408 n. 1.

In *Herring*, a bank sued the Texas Prison Commission for money from the sale of land. *Herring*, 269 S.W. at 1031. The Court held the State could not be sued without consent. *Id.* at 1033. However, the State was attempting to set aside the purchase; thus, that lawsuit was not, like this one, to recover for accepted goods and services. *See id.* at 1031.

In *Dodgen*, a company had a state permit to take mudshell from Galveston Bay. *Dodgen*, 308 S.W.2d at 838–39. When the Game and Fisheries Commission changed the permit's terms, the company sued for a declaration of its rights under the permit, which it contended was a contract. *Id.* at 839. The Court held the suit was one against the State

---

**5.** 453 S.W.2d 812 (Tex.1970).

**6.** 158 Tex. 74, 308 S.W.2d 838 (Tex.1958).

**7.** 114 Tex. 394, 269 S.W. 1031 (Tex.1925).

requiring legislative permission. *Id.* at 840, 842. However, there was no contract like the one here, and the plaintiff was not seeking the value of fully rendered services for which the State refused to pay.

In *Missouri Pacific Railroad,* MOPAC sought indemnity from the Brownsville Navigation District for its liability in a wrongful death suit under a "written track agreement" with the district. *Missouri Pac. R.R.,* 453 S.W.2d at 812–13. This agreement prohibited the district from allowing certain objects to be placed near the track; MOPAC alleged the district allowed an object, which caused a worker's death, to be so placed. *Id.* While recognizing the State's immunity from contract suit, the Court held that a "sue and be sued" statute showed legislative permission. *Id.* at 813. Neither the agreement nor the allegations were the same as here.

In *University of Texas at Dallas v. Ntreh,* on which TSU relies, the Court affirmed dismissal of a contract claim for the same reasons set out in *Federal Sign. Ntreh,* 947 S.W.2d 202, 202 (Tex.1997). In *Ntreh,* however, the contract claim was based on wrongful student discipline; it was not one for payment of delivered goods and services. *Ntreh v. University of Texas at Dallas,* 936 S.W.2d 649, 650 (Tex.App.—Dallas 1996), *aff'd in part and modified in part,* 947 S.W.2d 202 (Tex.1997). *Ntreh* is not dispositive.

## 2. Courts of Appeals Precedent

The *Obayashi* opinion is the only one applying *Federal Sign*'s concurring opinion's suggestion to the factual situation before us.[8] In *Obayashi,* a construction company completed a drainage project for the Alamo Community College District (ACCD) under a contract allowing for a base price plus equitable adjustments. *Id.,* op. at 746. The adjustments were included because ACCD wanted the cost of dealing with underground utility lines to be addressed under this provision on a case-by-case basis. *Id.,* op. at 748. After

completion, ACCD paid the base price, but denied numerous equitable adjustment claims. *Id.* Obayashi sued under various contract and tort theories. *Id.* The trial judge denied ACCD's plea of sovereign immunity, and the *Obayashi* court affirmed. *Id.,* op. at 747, 749.

The *Obayashi* court interpreted *Federal Sign* as holding only that the State's mere execution of a contract does not waive immunity from suit. *Id.,* op. at 748. Second, the *Obayashi* court held that ACCD had waived sovereign immunity from that contract suit:

> In this case, the same fundamental principles of equity we believe prompted the *Federal Sign* concurring and dissenting opinions lead us to conclude ACCD waived its sovereign immunity to Obayashi's suit by conduct other than merely entering the contract. Specifically, we hold ACCD's waiver of sovereign immunity from suit is established by ACCD's conduct in instructing Obayashi to exclude the costs associated with the underground utility lines from its bid, establishing a contractual means to cover these costs with the equitable adjustment clause, and accepting Obayashi's performance as full and satisfactory, as indicated by its payment of the full base price and four of Obayashi's 32 equitable adjustment claims. Under these circumstances, we hold ACCD is estopped from relying upon, and has waived, whatever sovereign immunity from suit it enjoys. If Obayashi succeeds in obtaining a judgment against ACCD, the practical and political concerns discussed in the *Federal Sign* concurrence "can be satisfied through the legislative appropriation process." *Id.* at 417 (Enoch, J., joined by Spector and Abbott, JJ., dissenting).

*Id.,* op. at 749–750. *Obayashi* answers our inquiry in Araserve's favor.

**8.** *Knowles v. Granbury,* on which Araserve relies, did not have similar facts and cited the *Federal Sign* concurring opinion's suggestion only in dicta. *See Knowles,* 953 S.W.2d 19, 23 (Tex.App.—Fort Worth 1997, pet. denied) (noting that State may waive immunity from suit by conduct ex-

ceeding contract's execution, but holding immunity waived under "sue or be sued" statute). The facts in *Ho v. University of Texas at Arlington,* 07–98–0062–CV, slip op. at 9–10, 1998 WL 767095 (Tex.App.—Amarillo, Nov. 4, 1998) (no pet. hist.)

We distinguish *Brown v. University of Texas Health Center at Tyler,*[9] on which TSU relies, because *Brown* was not considering *Federal Sign*'s concurring opinion's suggestion and did not concern a fully performed contract for goods or services that the State refused to pay for. *Id.* at 914.

We recognize that there are some factually similar court of appeals opinions—deciding cases in which the plaintiff had fully performed his contract, the State refused to pay, and the plaintiff sought payment for the goods and services rendered—holding that the legislature must still consent to suit, but these were decided before *Federal Sign. See Firemen's Ins. Co. of Newark, N.J. v. University of Texas Sys.,* 909 S.W.2d 540, 542 (Tex.App.—Austin 1995, writ denied); *Green Int'l, Inc. v. State,* 877 S.W.2d 428, 433 (Tex. App.—Austin 1994, writ dism'd). Therefore, they are not controlling.

### 3. Denial of Writ in *Firemen's Insurance*

TSU also relies on the fact that the Supreme Court denied application for writ of error in *Firemen's Insurance Company of Newark, N.J. v. University of Texas System* on the same day it decided *Federal Sign.* The *Firemen's Insurance* court held legislative consent was required to sue the defendant governmental entity even though the project was 97 percent complete before the State refused payment. *See id.* at 542. The Supreme Court denied writ and overruled a rehearing motion. *Firemen's Ins. Co. of Newark New Jersey v. Board of Regents of the Univ. of Texas Sys.,* 40 Tex. S.Ct. J. 938 (July 31, 1997). TSU argues that the denial of writ in *Firemen's Insurance* shows the Court intended not to change the requirement that consent to suit must come from the legislature.

We disagree. The Supreme Court's denial of an application for a writ of error does not reflect approval or even consideration of the case's merits. TEX. GOV.CODE ANN. § 22.007(e) (Vernon 1988); *Matthews Constr. Co. v. Rosen,* 796 S.W.2d 692, 694 n. 2 (Tex.1990); *see* TEX.R.APP. P.69.1; *Obayashi,* op. at 749–750 ("[W]e decline to read the denial of writ in *Firemen's [Insurance]*as an implicit rejection of the suggestion in the *Federal Sign*majority and concurring opinions that sovereign immunity [from suit] may be waived by conduct other than entering a contract...").

### D. Resolution

Do we follow the *Federal Sign* majority opinion's broad language or the concurring opinion's strong suggestion? We agree with the *Obayashi* court that the *Federal Sign* concurring opinion's suggestion controls. We are not unmindful of the well-founded rule, which *Federal Sign*'s majority and concurring opinions repeatedly reaffirmed, that only the legislature may waive sovereign immunity from suit. Nor do we ignore the compelling reasons cited by the *Federal Sign* concurring opinion for not abolishing all contract suit immunity. However, when three justices would abolish sovereign immunity in contract cases, a six-justice majority states "there may be" circumstances in which the State waives immunity from contract suits by conduct exceeding the contract's execution, and a four-justice concurrence strongly suggests such a waiver under facts identical to those here, we will follow that suggestion. *See Obayashi,* slip op. at 749–750.

Our decision is eased by other factors. First, many policy considerations that the *Federal Sign*concurring opinion said weighed against abolishing sovereign immunity do not exist for contract work already completed and accepted.[10] Second, because sovereign

(designated for publication) are obviously distinguishable.

9. 957 S.W.2d 911 (Tex.App.—Tyler 1997, no pet.).

10. "Must the State honor all long-term contracts when they no longer serve the public interest, continuing to spend tax revenues on matters that no longer benefit the people? If so, then the government's ability to respond to changing conditions for the welfare of the people as a whole is impaired. Moreover, each succeeding administration may become increasingly bound by the contracts of prior administrations with no way· of escape except payment of public resources. Would State officials be unduly anxious to conform to judicial policy wishes if they knew that judges could determine the State's liability for millions of dollars? Would the prospect of liability smother policy initiatives based upon truly changed circumstances?" *Federal Sign,* 951 S.W.2d at 414 (Hecht, J., concurring) (internal citations omitted).

immunity is unquestionably a judicially created rule, the judiciary should be allowed to alter it without unduly interfering with prerogatives of the legislature. If the legislature disagrees, it is of course free to outlaw such suits, as our courts have done for the last 150 years. Finally, the State has lost nothing. It still does not have to pay for goods it ordered, accepted, and enjoyed, unless the legislature chooses to do so. Does our government need more protection than that from having to pay its just debts?

Araserve's contract and quasi-contract claims seek only payment for the goods and services it provided and TSU accepted (plus contractual interest), nothing more. Therefore, we hold TSU waived its sovereign immunity from Araserve's contract and quasi-contract suit by the conduct alleged here, which exceeded the contract's mere execution in a way specifically recognized by the *Federal Sign* concurring opinion. *See Federal Sign*, 951 S.W.2d at 408 n. 1 & 412–13 (Hecht, J., concurring); *Obayashi*, op. at 750.

We overrule TSU's challenge to the denial of its jurisdictional plea on Araserve's contract and quasi-contract claims. We do not reach Araserve's alternative arguments (venue statute, attorney's fee provision) concerning waiver of immunity from suit for these claims or its request for abatement.

### III. Tort Claims

TSU next argues the trial judge erred in denying its jurisdictional plea on Araserve's fraud, misrepresentation, and negligent misrepresentation claims. Specifically, TSU argues (1) they sound in contract, not tort, and, alternatively, (2) the Texas Tort Claims Act[11] (TTCA) does not waive immunity for them. We need examine only the second argument.

■ Araserve does not contend the TTCA waives TSU's sovereign immunity from its tort claims. Rather, Araserve con-

tends only that TSU waived its right to assert an immunity defense to these claims by not pleading the defense sufficiently below. We disagree. TSU's answer and plea to the jurisdiction stated, "Absent a showing of waiver of the doctrine of sovereign immunity, this court is without jurisdiction to entertain a suit against the State of Texas...." TSU's briefs below argued that sovereign immunity from suit (1) extended to tort claims and (2) barred money damages as a remedy for the constitutional and tort claims. We hold this raised the defense of sovereign immunity. Nothing was waived. *See, e.g., Petta v. Rivera*, 923 S.W.2d 678, 686 (Tex. App.—Corpus Christi 1996, writ denied) (holding sovereign immunity not waived when answer noted claims were "barred by sovereign immunity").[12] Accordingly, we hold that the trial judge erred in denying TSU's jurisdictional plea on these three tort claims.

We sustain TSU's challenge to the denial of its jurisdictional plea on Araserve's tort claims.

### IV. Constitutional Claims

■ TSU also argues the trial judge erred in denying its jurisdictional plea on Araserve's constitutional claims. Specifically, TSU argues that, because Araserve seeks damages for these claims, they are in the nature of a constitutional tort, a claim that Texas does not recognize. Again, Araserve argues TSU waived this challenge by not raising it below.

■ There is no implied right of action for damages for violation of state constitutional rights. *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex.1995). Suits without consent seeking equitable remedies for constitutional violations are allowed, but suits for money damages are not. *Alcorn v. Vaksman*, 877 S.W.2d 390, 404 (Tex.App.—Houston [1st Dist.] 1994, writ denied). TSU argued below that sovereign immunity barred all constitutional claims for money damages.

---

11. Tex. Civ. Prac. & Rem.Code Ann. ch. 101 (Vernon 1997 & Supp.1998).

12. We disagree with Araserve's contention that TSU's docketing statement in this Court somehow limits TSU's appellate arguments or shows

TSU did not challenge the tort claims below. The docketing statement is for administrative purposes only and does not waive anything. Tex. R.App. P. 32.4.

Thus, if TSU had to plead sovereign immunity, it did so. Araserve does not contend the State waived sovereign immunity from its constitutional claims. Accordingly, we hold that TSU has sovereign immunity from suit for this nonexistent cause of action. *Id.* at 404; *Harrison v. Texas Dept. of Criminal Justice*, 915 S.W.2d 882, 888 (Tex.App.—Houston [1st Dist.] 1995, no writ). Therefore, the trial judge erred in denying TSU's jurisdictional plea on Araserve's constitutional claims.

We sustain TSU's challenge to the denial of its jurisdictional plea on Araserve's constitutional claims.

### V. Conclusion

We modify the order denying TSU's plea to the jurisdiction to dismiss only Araserve's tort and constitutional claims, and we affirm the order as so modified.

### OPINION ON REHEARING

PER CURIAM.

On Motion for rehearing, Texas Southern University (TSU) argues for the first time that we should treat appellee's contract and quasi-contract claims differently, because TEX. CONST. art. III, § 44 precludes quasi-contractual claims against the State. That is the opposite of what TSU argued to us in its brief, where it stated:

> Because quantum meruit, unjust enrichment and detrimental reliance are remedies that imply a contract where none has in fact been created under law based on the parties' conduct, for purposes of sovereign immunity analysis they are treated the same as a contract claim. ... Thus, although this section is stated in terms of a legal contract, it is intended to address all six (6) of Araserve's contract and quasi-contract claims....

TSU's motion for rehearing is **DENIED**.