TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-98-00653-CV






Texas Natural Resource Conservation Commission, Appellant



v.



IT-Davy, Appellee






FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT


NO. 98-07589, HONORABLE PETER M. LOWRY, JUDGE PRESIDING 







 Appellee IT-Davy sued appellant Texas Natural Resource Conservation Commission
(the "Commission") for claims arising out of a contract for the clean-up of a hazardous waste site. 
The Commission brings this interlocutory appeal of the trial court's order denying its plea to the
jurisdiction, (1) asserting that the trial court erred in failing to dismiss the cause for lack of
jurisdiction on the basis of sovereign immunity. We will affirm the order of the trial court.


BACKGROUND

 We determine the trial court's jurisdiction from the good-faith factual allegations
made in appellee's pleadings. See Brannon v. Pacific Employers's Ins. Co., 224 S.W.2d 466, 469
(Tex. 1949); Texas Parks & Wildlife Dep't v. Callaway, 971 S.W.2d 145, 147 (Tex.
App.--Austin 1998, no pet.). Therefore, our recitation of the facts comes from IT-Davy's
amended petition. Moreover, the Commission has stipulated to this version of the facts for
purposes of its plea to the jurisdiction.

 In 1990, the Commission sought bids from contractors for the clean-up of the Sikes 
Disposal Pits (the "Sikes site") in Harris County. The Sikes site had been used as a dumping area
for unsegregated chemical wastes from area petrochemical companies in the late 1960s and early
1970s. As a result, the soil and groundwater on the site were contaminated to the extent that the
United States Environmental Protection Agency ("EPA") placed the Sikes site on the National
Priorities List under the Superfund program of the Comprehensive Environmental Response,
Compensation and Liability Act. See 42 U.S.C.A. §§ 9601-9626 (West 1991). EPA and the
Commission agreed on a plan to remediate the Sikes site. EPA would fund up to 90% of the costs
and the Commission would administer the clean-up, including the hiring of contractors to perform
the clean-up.

 The Commission issued an Invitation for Bids (the "Invitation") seeking contractor
bids for the remediation of the Sikes site. The project involved the excavation and incineration
of contaminated soils, sediments, and other wastes, as well as the treatment of contaminated
surface water and groundwater. The Commission envisioned a two-phase clean-up operation: 
Phase A, involving the construction of the incineration facility necessary for the remediation of
the waste; and Phase B, involving the Trial Burn of the incineration facility and the subsequent
incineration of the waste. The Invitation included detailed reports containing information
regarding the contamination level of the soil and the groundwater. The Invitation further provided
that bidding contractors could rely on the accuracy of the technical data found in the reports.

 IT-Davy submitted a bid that was accepted by the Commission in March 1990. IT-Davy and the Commission entered into the Contract for Phase B Remediation Services - Sikes
Disposal Pits Remedial Action (the "Contract") on July 27, 1990. The Contract provided in
relevant part:


If [the Commission] finds that conditions materially differ and will cause an
increase or decrease in the CONTRACTOR'S cost or the time required to perform
any part of the work under this Agreement, whether or not changed as a result of
such conditions, the [Commission] shall make an equitable adjustment and modify
this Agreement in writing.


* * * * *



If any change under this article causes an increase or decrease in the
CONTRACTOR'S cost or time required to perform any part of the work under this
Agreement, whether or not changed by any order, the [Commission] shall make an
equitable adjustment. . . . In the case of defective specifications for which the
[Commission] is responsible, the equitable adjustment shall include any increased
cost the CONTRACTOR reasonably incurred in attempting to comply with those
defective specifications.


* * * * *



Except as may be otherwise provided in this Agreement, all claims, counterclaims,
disputes, and other matters in question between [the Commission] and the
CONTRACTOR arising out of or relating to this Agreement or the breach thereof
will be decided by arbitration if the parties mutually agree to arbitration or
otherwise in a court of competent jurisdiction in the City of Austin, Travis County,
Texas.



 IT-Davy began the remediation of the Sikes site in October 1990. During the clean-up, IT-Davy encountered conditions at the site that differed materially from the conditions it
expected based upon the data provided by the Commission in the Invitation, and which conditions
IT-Davy relied upon in structuring its bid. IT-Davy continued work on the Sikes site, but began
a dialogue with the Commission over cost overruns due to the materially different conditions
encountered at the site. After completion of the work, IT-Davy sought equitable adjustments from
the Commission pursuant to the Contract. In a letter to the Executive Director of the Commission,
IT-Davy outlined its position regarding the materially different site conditions and the charges
incurred by IT-Davy as a result:


Material Density of the Contaminated Soil $3,739,290

The actual waste feed material density at the site was lower than the density figures
provided to IT[Davy] when IT[Davy] submitted its bid for the Contract.

Level of Groundwater Contamination $1,242,444

The concentration of contaminated water requiring on-site treatment was greater
than the average contamination level reported in the Remedial Investigation Report.

Dual Stack Test Requirement $ 607,289

[The Commission] required IT[Davy] to test and sample both stacks on the
incineration facility when testing of only one stack was necessary under the
Contract.

Repeated Shallow Excavation $ 560,102

[The Commission] directed IT[Davy] to excavate contaminated soils from the site
in multiple shallow cuts, which were in many cases unnecessary and increased
IT[Davy] costs beyond what it had reasonably anticipated for excavation.

Selection of POHCs $ 303,644

[The Commission] ordered IT[Davy] to demonstrate the efficiency of the
incineration facility using one volatile principal organic hazardous constituent
("pohc") and one semi-volatile POHC. This requirement was contrary to EPA
guidance, unreasonable and unnecessary for establishing destruction removal
efficiency.

Flood Damage Repair $ 270,887

Flood damage caused IT[Davy] to incur costs that were not anticipated in the
bidding of the Contract. Under the Contract, [the Commission] had responsibility
to insure the remediation work against damages from causes beyond the control of
IT[Davy]. [The Commission] has been unreasonable in refusing to compensate IT-Davy for these costs.


 TOTAL $6,723,655

(Emphases in original.) The Commission responded in a letter from the Executive Director: 


We appreciate the good work [IT-Davy] did at the Sikes site and the fact that the
site was able to [sic] removed from the list of Superfund sites requiring
remediation. We believe we have paid all amounts due not only under the original
contract but also under the numerous contract amendments that we agreed to during
the course of the cleanup. 


If you feel the need to pursue additional remedies, we intend to participate in those
with the good faith we have demonstrated over the past several years. But we must
decline your most recent demand for payment. 



IT-Davy sought arbitration of the dispute over payment pursuant to the Remedies provision of the
Contract, but the Commission denied this request.

 IT-Davy then brought suit seeking declaratory relief and money damages, alleging
causes of action for breach of contract, negligent misrepresentation, and quantum
meruit/promissory estoppel. The Commission responded with a plea to the jurisdiction and a
denial of the allegations. The trial court held a hearing on the Commission's plea. The parties
stipulated that, for purposes of the hearing, all of the allegations of fact in IT-Davy's petition
would be taken as true, and the trial court could consider the two letters quoted above for purposes
of determining jurisdiction. After the hearing, the trial court denied the Commission's plea to the
jurisdiction and this appeal ensued. The Commission challenges the trial court's finding of
jurisdiction, arguing that as an agency of the State, it enjoys immunity from suit absent consent
obtained from the legislature.


DISCUSSION

 IT-Davy asserts jurisdiction under four theories: (1) the Commission waived its
immunity from suit by its acceptance of IT-Davy's undisputed full performance of the contract;
(2) the legislature waived the Commission's immunity from suit by enacting a statute expressly
allowing for judicial review of the Commission's actions; (3) the Declaratory Judgments Act
waived the Commission's immunity from suit in lawsuits seeking a declaration of rights under a
contract with the State; and (4) the Commission waived its immunity from suit in agreeing to the
Contract's Remedies clause, which provides for court resolution of disputes under the contract. 
The trial court did not specify in its order the grounds on which it found jurisdiction. We may
therefore affirm the order of the trial court should we agree with any of these arguments. See
Tenneco, Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 642-43 (Tex. 1996). We begin our
review with the concept of sovereign immunity.


Sovereign Immunity

 It has long been recognized that sovereign immunity protects the State from lawsuits
for damages, absent legislative consent to sue. See, e.g., Federal Sign v. Texas S. Univ., 951
S.W.2d 401, 405 (Tex. 1997). The term "sovereign immunity" actually includes two principles: 
immunity from suit and immunity from liability. Id. Immunity from suit bars a suit against the
State, even if the State acknowledges liability for the asserted claim, unless the legislature has
given consent to sue. Id. Immunity from liability provides that even if the legislature has given
consent to sue, the State may not be adjudged liable for the claim asserted. Id. When the State
enters into a contract with a private entity, it gives up its immunity from liability, but not its
immunity from suit. Id.

 The Commission relies upon Federal Sign for the proposition that, because IT-Davy
has not obtained consent from the legislature for this lawsuit, the trial court is without jurisdiction. 
Federal Sign involved a contract with Texas Southern University ("TSU") whereby Federal Sign
was to build and deliver basketball scoreboards to TSU. Before Federal Sign had completed and
delivered the scoreboards, TSU indicated that it would secure the scoreboards from another
source. Federal Sign sued for breach of contract. The trial court overruled TSU's plea to the
jurisdiction, submitted the cause to the jury, and rendered judgment on the jury verdict in favor
of Federal Sign. On appeal, the supreme court reversed, holding: "The act of contracting does
not waive the State's immunity from suit." See Federal Sign, 951 S.W.2d at 408. However, the
supreme court expressly limited its decision to the facts at hand:


We hasten to observe that neither this case nor the ones on which it relies should
be read too broadly. We do not attempt to decide this issue in any other
circumstances other than the one before us today. There may be other
circumstances where the State may waive its immunity by conduct other than
simply executing a contract so that it is not always immune from suit when it
contracts.



Id. at 408 n.1. 

 This Court has had occasion to visit the concept of sovereign immunity in two
recent opinions. See Little-Tex Insulation Co. v. General Servs. Comm'n, No. 3-98-297-CV (Tex.
App.--Austin July 29, 1999, no pet. h.); Aer-Aerotron, Inc. v. Texas Dep't of Transp., No. 3-97-649-CV (Tex. App.--Austin June 17, 1999, no pet. h.). Our holding in this cause is guided by
the principles outlined in these previous cases. Both Little-Tex and Aer-Aerotron recognize that
the supreme court in Federal Sign left the door open to waiver of immunity from suit by conduct:
"[T]his Court has recently interpreted Federal Sign to mean that 'only the legislature can generally
pronounce that the mere act of signing a contract abrogates the State's immunity from suit, but an
entity of the State may waive its immunity with regard to a particular contract if warranted by its
conduct.'" See Little-Tex, slip op. at 9 (quoting Aer-Aerotron, slip op. at 7). (2)

 We thus turn to an analysis of whether the Commission engaged in conduct, beyond
the mere execution of the contract, that waived its immunity from suit. In Little-Tex we held that,
under the facts presented therein, the State effectuates a waiver of immunity from suit when it
accepts goods or services tendered pursuant to a contract and then refuses to pay for the accepted
goods and services. See Little-Tex, slip op. at 12. IT-Davy alleged in its pleadings that it fully
performed on the Contract and even executed additional work at the express request of the
Commission, that the Commission accepted this work, and that the Commission has failed to fully
pay for the accepted services. The Commission has stipulated that the allegations of fact contained
in IT-Davy's petition shall be accepted as true for purposes of its plea to the jurisdiction. Based
upon our holdings in Aer-Aerotron and Little-Tex, these allegations alone are sufficient to waive
the Commission's immunity from suit for purposes of this appeal. We therefore overrule the
Commission's single point of error challenging the trial court's jurisdiction. Accordingly, we
need not address IT-Davy's remaining assertions of jurisdiction.


CONCLUSION

 Based upon case law and the stipulation of the parties, we take IT-Davy's
allegations of fact as true. IT-Davy has pled full performance of a contract, acceptance by the
Commission, and a failure of the Commission to pay for the accepted services. These allegations
are sufficient to show that the Commission has engaged in conduct, beyond the mere execution
of a contract, that waives its immunity from suit. Consequently, we affirm the trial court's order
denying the Commission's plea to the jurisdiction.



 

 Mack Kidd, Justice

Before Chief Justice Aboussie, Justices Kidd and B. A. Smith

Affirmed

Filed: August 26, 1999

Publish
1. See Tex. Civ. Prac. & Rem. Code Ann. § 51.014(5) (West 1997).
2. We note that two other courts of appeal have addressed the State's immunity from suit in a
breach of contract case; the holdings of both courts are consistent with our interpretation of
Federal Sign. See Texas S. Univ. v. Araserve Campus Dining Servs., Inc., 981 S.W.2d 929, 932
(Tex. App.--Houston [1st Dist.] 1998, pet. denied); Alamo Community College Dist. v. Obayashi
Corp., 980 S.W.2d 745, 749 (Tex. App.--San Antonio 1998, pet. denied).



d that it would secure the scoreboards from another
source. Federal Sign sued for breach of contract. The trial court overruled TSU's plea to the
jurisdiction, submitted the cause to the jury, and rendered judgment on the jury verdict in favor
of Federal Sign. On appeal, the supreme court reversed, holding: "The act of contracting does
not waive the State's immunity from suit." See Federal Sign, 951 S.W.2d at 408. However, the
supreme court expressly limited its decision to the facts at hand:


We hasten to observe that neither this case nor the ones on which it relies should
be read too broadly. We do not attempt to decide this issue in any other
circumstances other than the one before us today. There may be other
circumstances where the State may waive its immunity by conduct other than
simply executing a contract so that it is not always immune from suit when it
contracts.



Id. at 408 n.1. 

 This Court has had occasion to visit the concept of sovereign immunity in two
recent opinions. See Little-Tex Insulation Co. v. General Servs. Comm'n, No. 3-98-297-CV (Tex.
App.--Austin July 29, 1999, no pet. h.); Aer-Aerotron, Inc. v. Texas Dep't of Transp., No. 3-97-649-CV (Tex. App.--Austin June 17, 1999, no pet. h.). Our holding in this cause is guided by
the principles outlined in these previous cases. Both Little-Tex and Aer-Aerotron recognize that
the supreme court in Federal Sign left the door open to waiver of immunity from suit by conduct:
"[T]his Court has recently interpreted